BEACH v LIMA TOWNSHIP

Docket No. 274920. Submitted April 9, 2008, at Lansing. Decided April
    21, 2009, at 9:15 a.m.

    Florence Beach brought an action in the Washtenaw Circuit Court
    against Lima Township and Jeffrey Munger, seeking to quiet title to
    streets dedicated on a plat recorded in 1835. Other parties were
    subsequently added as plaintiffs. The township had acquired several
    of the lots shown on the plat and sought to use the streets for ingress
    to and egress from a fire station it proposed to build on the lots. The
    plaintiffs asserted that they had acquired title to the streets by
    adverse possession. The township brought a counterclaim, asserting
    that the plaintiffs had to bring an action under the Land Division Act,
    specifically MCL 560.221 through 560.229, to vacate streets created
    by a plat. The court, Donald E. Shelton, J., denied the township
    summary disposition and, following an evidentiary hearing on the
    adverse possession question, granted the plaintiffs summary disposi-
    tion. The township appealed.

    The Court of Appeals *held*:

    1. The plaintiffs were not required to bring their adverse
possession action under the Land Division Act. The dedication of
the streets in the plat occurred before the act took effect on
January 1, 1968. The act does not apply to this case because the
plaintiffs did not seek to vacate, correct, or revise a dedication in a
recorded plat. Rather, they sought to quiet title to the irrevocable
easements created by the private dedications in the plat.

    2. A person can adversely possess an easement created by private
dedication in a plat. While dedication in a plat recorded before 1968
created an irrevocable easement rather than the fee simple interest
created by a dedication on or after January 1, 1968, the heart of an
adverse possession claim is that a party is effectively and unlawfully
intruding on a real property interest lawfully held by another. To
establish adverse possession, the person claiming it must show that
his or her possession was actual, visible, open, notorious, exclusive,
hostile, under cover of a claim of right, continuous, and uninter-
rupted for a period of 15 years, which is the period of limitations
found in MCL 600.5801(4). That statute makes no exception for
dedicated property. Because an easement is involved, however, a

heightened level of scrutiny applies. There must be sufficient evidence showing hostile prevention of the use of the easement or use that is wholly inconsistent with the easement.

3. MCL 600.5821(2), which exempts actions by a municipal corporation for recovery of the possession of highways, streets, alleys, or public grounds from the otherwise applicable periods of limitations, does not preclude the plaintiffs' adverse possession claims. This case involves privately dedicated streets in which the township has interests solely by virtue of its ownership of lots within the subdivision. No public grounds are at issue.

4. The plaintiffs offered sufficient proofs to satisfy all the elements of adverse possession. Their barn, crops, trails, tree plantings, and fences were evidence of acts or uses inconsistent with any right to use the disputed property as roads.

Affirmed.

ADVERSE POSSESSION — EASEMENTS — LAND DIVISION ACT — PLATTED LANDS — DEDICATED PROPERTY IN PLATS.

Adverse possession can apply against easements created by private dedications in a plat recorded before the January 1, 1968, effective date of the Land Division Act (MCL 560.101 *et seq.*).

*Keusch, Flintoft & Conlin, P.C.* (by *Peter C. Flintoft*), for Florence Beach.

*Reading, Etter & Lillich* (by *Victor L. Lillich*) for Lima Township.

Before: WILDER, P.J., and MURPHY and METER, JJ.

WILDER, P.J. In this property dispute, defendant Lima Township (defendant or the township) appeals by right the trial court's order granting plaintiffs' motion for summary disposition. We affirm.

I

A

In 1835, a plat was made for Harford Village and recorded. The plat established 68 lots in six blocks.

Jackson Road, adjacent to the village, is a state public road, and West Street, shown on the plat, is a county public road. The other roads shown on the plat (North, South, East, and Cross streets) were not developed or used as roads.

The northern boundary of plaintiffs' property, known as the Beach farm, is interstate highway 94. The Beach farm includes lots 1 through 14 of block II of the plat (together these lots are known as parcel 1) and lots 1 through 6 of block III of the plat (together these lots are known as parcel 2).

The first recorded conveyance was a deed to William Beach in 1854. William Beach was Florence Beach's great-great-grandfather. Florence Beach's father, Dwight Beach, was born in the farmhouse located on the Beach farm. But the Beach family left the farm in 1922. From 1922 to sometime between 1967 and 1969, none of the Beach family lived or worked on the farm. Instead, a tenant farmer lived and worked there.

In 1954, the township received a conveyance of lots 4 and 11 of block I. The deed was by reference to the recorded plat. This property was and continues to be used for a township hall. In 1967 or 1969, Dwight Beach retired from the service and returned to the farm with Florence Beach, who was 14 years old. They erected fences on the property, extending them into areas designated on the plat as roads.

In 2004, the township acquired lots 5, 6, 7, 12, 13, and 14 of block I by a deed that referred to "the south 25 feet of Lots 12, 13, and 14 deeded for highway purposes." The township's four northerly lots (lots 4, 5, 6, and 7) are bounded by platted but undeveloped roads only, with no direct access to a developed road except through the township's southerly lots (lots 11, 12, 13, and 14) to Jackson Road. The township plans to construct a fire

station on its northerly lots and to use North and Cross streets within the plat for ingress and egress.

In August 2004, according to plaintiffs' complaint, the township breached plaintiffs' boundary fence on the north side of lots 4, 5, 6, and 7 of block I. The township took that action under a claim of right to open the streets, as dedicated in the plat. Plaintiffs responded by claiming that the Beach farm includes the platted streets because such streets were never used, opened, or accepted by the public or by any lot owner. Plaintiffs argued that the platted streets did not exist and that title to the platted but unused streets had merged into the title of the Beach farm by adverse possession and abandonment. The township responded that the dedicated streets on the plat had not been vacated and that, if and when they were vacated, title would have vested in the owners of the lots abutting the vacated streets.

B

Florence Beach brought this action to quiet title to the streets at issue, based on adverse possession claims, and the other plaintiffs were joined later. The township filed a counterclaim to quiet title to the streets. Defendant filed a motion for summary disposition under MCR 2.116(C)(8) and (10), claiming that plaintiffs had failed to state a claim because an action to vacate streets created by a plat had to be brought under the Land Division Act (LDA), specifically under MCL 560.221 through 560.229, the provisions concerning plats. Plaintiffs filed a countermotion for summary disposition under subrules C(8), (9), and (10).

The trial court denied defendant's motion, holding that the LDA did not apply. It took plaintiffs' motion under advisement. Defendant filed a motion for recon-

sideration, arguing that the trial court lacked jurisdiction to alter or revise a plat under a quiet title action and that such revision could only occur under an LDA action. The trial court again denied relief and proceeded to hold an evidentiary hearing on the adverse possession question. Following the hearing, the trial court issued an opinion and order granting plaintiffs' motion for summary disposition.

II

The township first argues that the trial court erred by not dismissing plaintiffs' action because plaintiffs' claim was not brought under the LDA. We disagree.

A

We review de novo summary dispositions. *Willett v Waterford Charter Twp*, 271 Mich App 38, 45; 718 NW2d 386 (2006). Statutory interpretation, including interpretation of the LDA, is a question of law reviewed de novo. *Martin v Beldean*, 469 Mich 541, 546; 677 NW2d 312 (2004). A claim for adverse possession is equitable in nature. See *Mulcahy v Verhines*, 276 Mich App 693, 698; 742 NW2d 393 (2007). And decisions regarding equitable claims, defenses, doctrines, and issues are reviewed de novo. *Dyball v Lennox*, 260 Mich App 698, 703; 680 NW2d 522 (2004). Whether the trial court erred by trying this matter as a quiet title action rather than requiring an action to vacate a road under the LDA is a question of law reviewed de novo. *Hall v Hanson*, 255 Mich App 271, 276; 664 NW2d 796 (2003).

B

This appeal hinges on the interpretation of *Martin* and its companion case, *Little v Hirschman*, 469 Mich

553; 677 NW2d 319 (2004). Also implicated is the Supreme Court's recent decision in *Tomecek v Bavas*, 482 Mich 484; 759 NW2d 178 (2008). Plaintiffs argue that *Martin* is inapplicable because it applies to private dedications filed on or after January 1, 1968, and rely instead on *Little*, which holds that "dedications of land for private use in plats before 1967 PA 288 took effect convey at least an irrevocable easement in the dedicated land." *Little*, 469 Mich at 564. We agree with plaintiffs that *Little* is applicable because the plat dedication at issue here occurred before 1967 PA 288[1] took effect.

Since *Little* is applicable here, we consider whether the *second* holding of *Martin*, "that the exclusive means available when seeking to vacate, correct, or revise a dedication in a recorded plat is a lawsuit filed pursuant to MCL 560.221 through 560.229," is *also* circumscribed by the January 1, 1968, date. *Martin*, 469 Mich at 542-543. We are persuaded that *Martin* and the LDA are not applicable to the present case because plaintiffs did not seek in this action "to vacate, correct, or revise a dedication in a recorded plat." Therefore, the trial court did not err by allowing plaintiffs' quiet title claim to proceed.

Given that the trial court properly allowed plaintiffs' quiet title claim to proceed, we next consider whether private easements dedicated in plats can be adversely possessed. We hold that they can.

The parties are in agreement that the 1835 recording of the plat constituted a private dedication that encompassed, in part, North and Cross streets, which, although platted, were never developed as streets. The township planned to use that section of North Street

---

[1] 1967 PA 288 was originally titled the Subdivision Control Act, but is now titled the Land Division Act. 1967 PA 288 took effect on January 1, 1968.

located north of an area referred to as block I and that section of Cross Street located east of block I for ingress to and egress from a fire station to be constructed on adjacent lots within block I. The trial court found that plaintiffs had established ownership of the relevant portions of the streets in dispute, under the doctrine of adverse possession.

Reading together the opinions in *Martin* and *Little*, we conclude that private dedications in plats filed on or after January 1, 1968, are expressly recognized and permitted under Michigan law, MCL 560.253(1) (enacted as part of 1967 PA 288), and that private dedications in plats registered before January 1, 1968, such as the dedication here, are likewise legally sound. There is a distinction between pre-1968 private dedications and ones contained in plats filed thereafter, which is that "a private dedication made before 1967 PA 288 took effect conveyed an irrevocable easement, whereas MCL 560.253(1) now indicates that a private dedication conveys a fee interest . . . ." *Martin*, 469 Mich at 548 n 18. But even though a fee simple interest is conveyed, lot owners in the subdivision cannot use the dedicated land for any purpose they desire. Rather, use must be compatible and consistent with the dedicatory language. *Id.* at 549 n 19.

Here, given the plat and dedication date of 1835, an irrevocable easement, as opposed to a fee simple interest, was created in favor of the lot owners. The private dedication became irrevocable on the sale of the lots. *Little*, 469 Mich at 558-559. "[A] private dedication is effective upon the sale of a lot because it is reasonably assumed that the value of that lot, as enhanced by the dedication, is reflected in the sale price. That is, purchasers relied upon the dedications that made the property more desirable." *Id.* at 559. A landowner is

considered to have accepted "any private dedication in a plat when property is purchased pursuant to a deed that references the plat." *Martin*, 469 Mich at 549 n 19.

Stated otherwise, "purchasers of parcels of property conveyed with reference to a recorded plat have the right to rely on the plat reference and are presumed to 'accept' the benefits and any liabilities that may be associated with the private dedication." *Id.* Quoting *Minnis v Jyleen*, 333 Mich 447, 454; 53 NW2d 328 (1952), *Little* stated that the " 'rights granted under the dedicatory clauses in the plat to the owners of lots in the subdivision may not be infringed by one lot owner for his own convenience to the detriment of his fellow lot owners.' " *Little*, 469 Mich at 560.

An easement created by a private dedication cannot be revoked and binds the original owner-plattor and successors. But these principles do not preclude adverse possession of such an easement.

The heart of an adverse possession claim is that a party is effectively and unlawfully intruding on a real property interest lawfully held by another. In other words, the adverse possessor is doing something that the law prohibits and for which the owner has an action. Michigan courts long ago adopted a common-law theory of adverse possession, see, e.g., *Sanscrainte v Torongo*, 87 Mich 69; 49 NW 497 (1891), under which a claim of adverse possession was a positive claim, by the possessor, to actual ownership of disputed property, rather than a statute-of-limitations defense to a real property action by the putative titleholder. In this manner, after a period of open, notorious, and hostile possession, title passes from the putative titled owner to the person who has actually been in possession of the land.

MCL 600.5801 extends, in the statutory context, this longstanding common-law recognition of the doctrine of adverse possession and provides, in pertinent part:

> No person may bring or maintain any action for the recovery or possession of any lands or make any entry upon any lands unless, after the claim or right to make the entry first accrued to himself or to someone through whom he claims, he commences the action or makes the entry within the periods of time prescribed by this section.

> \* \* \*

> (4) In all other cases under this section [subsections 1 through 3 are not applicable here], the period of limitation is 15 years.

To establish adverse possession, the person claiming it (e.g., the person opposing the real property action by the existing owner, by asserting the limitations-period defense) must show that his or her possession was actual, visible, open, notorious, exclusive, hostile, under cover of a claim of right, continuous, and uninterrupted for the statutory period of 15 years. *Wengel v Wengel*, 270 Mich App 86, 92; 714 NW2d 371 (2006). The elements of adverse possession are not arbitrary requirements; rather, they reflect the logical consequence of a party claiming ownership by adverse possession having the burden to prove that the period of limitations has expired. *Id. Wengel*, quoting *Kipka v Fountain*, 198 Mich App 435, 439; 499 NW2d 363 (1993), further observed:

> "To claim by adverse possession, one must show that the property owner of record has had a cause of action for recovery of the land for more than the statutory period. A cause of action does not accrue until the property owner of record has been disseised of the land. MCL 600.5829. Disseisen occurs when the true owner is deprived of

possession or displaced by someone exercising the powers and privileges of ownership." [*Wengel*, 270 Mich App at 92.]

We cannot bar an adverse possession claim on the grounds that it would result in an invasion of a legally protected property interest, i.e., an irrevocable easement created by a private dedication,[2] because it is the case with all adverse possession claims that recognition of such a claim would result in an invasion of a legally protected property interest. Adverse possession succeeds when the interest of the owner of record, once afforded protection, is no longer legally shielded because the record owner failed to commence an action within the limitations period in MCL 600.5801(4).

For example, if plaintiffs had actually constructed a house on the disputed area that stood for more than 15 years and blocked entirely any use of the easement, and had the township filed a suit for removal of the house on the basis that it sat within the area of the easement created by the private dedication, then MCL 600.5801(4), *which makes no exception for dedicated property*, would absolutely bar the action because the 15-year period to maintain an action for recovery or possession would have expired. Indeed, the township and other lot owners would no longer be free to "make any entry upon [the] lands . . . ." MCL 600.5801. Under such circumstances, there would be no legal mechanism to prevent plaintiffs' continuing use of the property, which explains why the law of acquiring title by adverse possession arose: an adverse possessor can no longer be removed from the property, nor can the record owner lawfully intrude on the land, so therefore the law will recognize legal title in favor of the adverse possessor.

---

[2] We note that plaintiffs' claim was not one seeking revocation of the easement, but one seeking recognition of termination, or extinguishment, of the easement by adverse possession.

This underlying premise cannot be discarded merely because, under the instant circumstances, the alleged acts of adverse possession did not entail construction of a home or because it was plaintiffs, not the township, who brought suit first. Any easement rights in North Street and Cross Street held by the township and the other lot owners had to be invoked within 15 years of disseisen, either by timely pursuit of an action, or as a defense or counterclaim, raised within the limitations period. Otherwise, those rights were subject to being lost, given the statutory mandate that a property owner cannot sit on his or her rights indefinitely. Failing to permit a standalone adverse possession claim would render MCL 600.5801 superfluous and would amount to a judicial end-run around a statute and a doctrine of common law accepted for generations in this state.

The fact that an easement interest is at stake does somewhat alter the evidentiary burden in relation to the adverse possession analysis. "[A]n easement may be enforced at any time up to its extinguishment by adverse possession[.]" *Terlecki v Stewart*, 278 Mich App 644, 663; 754 NW2d 899 (2008), citing *Longton v Stedman*, 196 Mich 543, 545; 162 NW 947 (1917). "In Michigan[,] use of an easement by the owner of the servient estate will not ripen into adverse possession unless such use is inconsistent with the easement." *Nicholls v Healy*, 37 Mich App 348, 349; 194 NW2d 727 (1971). The *Nicholls* Court noted the need for the application of a heightened level of scrutiny in regard to adverse possession of an easement, stating:

> The record reveals extensive use of the easement by defendants and their predecessors in title. Two rows of trees were planted along the length of the easement, a privy was erected on the easement, for a period of time a bathhouse stood on the strip, and prior to the time the land was sold to defendants' predecessor in title a fence was

constructed along one end of the strip. A careful review of the testimony, however, indicates that none of these uses interfered with plaintiffs' rights of passage. None of the uses seriously blocked passage on the strip. A gate had been put in the fence and was eventually removed. Even if not removed, maintenance of a gate across the right of way if it permitted use of the way "would not constitute an obstruction to the way or result in the loss of the way by ouster or adverse possession." *Greve v. Caron*, [233 Mich 261, 266; 206 NW 334 (1925)].

Strictly construing the evidence supporting the claim of adverse possession, as we must . . . , we find that the record here fails to establish acts evidencing hostile prevention of the plaintiffs' rights of passage. [*Id.* at 350.]

In addition, our Supreme Court has indicated that adverse possession of an easement can be established if there is sufficient evidence showing hostile prevention of the use of the easement or use that is wholly inconsistent with the easement. *Harr v Coolbaugh*, 337 Mich 158, 165-166; 59 NW2d 132 (1953); *Greve*, 233 Mich at 266-267. "An easement may terminate by adverse possession, but such termination is difficult to establish." 1 Cameron, Michigan Real Property Law (3d ed), § 6.30, p 241.

Having concluded that a party is lawfully entitled to maintain an adverse possession claim with respect to property subject to an irrevocable easement created by a private dedication in a recorded plat, we further conclude that while there is no *requirement* to do so, an adverse possession claim *may* be brought under the LDA.

The LDA provides that a circuit court may "vacate, correct, or revise all or a part of a recorded plat." MCL 560.221. In general, an LDA complaint must be filed "by the owner of a lot in the subdivision, a person of record claiming under the owner, or the governing body of the municipality in which the subdivision covered by the plat

is located." MCL 560.222. The complaint must identify the land at issue within the plat and state the "plaintiff's reasons for seeking the vacation, correction, or revision." MCL 560.223(a) and (b). MCL 560.224a identifies all the individuals and entities that a plaintiff must join as party defendants in an LDA action. With some enumerated exceptions, "[u]pon trial and hearing of the action, the court may order a recorded plat or any part of it to be vacated, corrected, or revised[.]" MCL 560.226(1).

In *Martin*, 469 Mich at 550, the Court ruled that the plaintiffs' efforts to have a plat dedication of an outlot declared "null and void" required the filing of an LDA action under MCL 560.221 *et seq*. The plaintiffs' lawsuit had sought removal of plat language reserving an outlot for the use of lot owners. *Id.* at 545. The Court concluded that "because plaintiffs were attempting to vacate, correct, or revise the plat, we find that the trial court erred when it allowed this case to proceed as a quiet title cause of action." *Id.* at 551. *Martin* reasoned that requiring an LDA lawsuit ensured that filed plats remained accurate. *Id.* at 551 n 24. The Court specifically held "that the *exclusive* means available when seeking to vacate, correct, or revise a dedication in a recorded plat is a lawsuit filed pursuant to MCL 560.221 through 560.229." *Id.* at 542-543 (emphasis added).

Correctly understanding the full ramifications of *Martin* can only be accomplished by viewing it in conjunction with *Tomecek*. The lead opinion in *Tomecek* defined the parameters of an action under the LDA, stating:

> The LDA provides a process for surveying and marking subdivided property. Property information is compiled on a plat that is then recorded with the local municipality. The LDA allows a circuit court to vacate, correct, or revise a recorded plat. Defendants argue that the LDA permits a court to alter a plat map only to properly reflect existing

property rights; it cannot affect the substantive rights of the underlying property owners.

When construing the LDA, we are mindful that our primary goal is to ascertain and give effect to the Legislature's intent. When determining intent, we consider first the language of a statute. The LDA allows a court to "order a recorded plat or any part of it to be vacated, corrected, or revised . . . ." "Plat" is defined in the act as "a map or chart of a subdivision of land."

The LDA defines a plat as a map. A plat is a description of the physical property interests on a particular area of land. A map, by itself, is not a determination of substantive property interests. If one "revises" a map of the United States to show Michigan encompassing half of the country, it does not make it so. The LDA was never intended to enable a court to establish an otherwise nonexistent property right. Rather, the act allows a court to alter a plat to reflect property rights already in existence.

In this case, the LDA did not create new substantive property rights when the circuit court altered the plat to reflect that the central easement encompasses utility access. This right existed with respect to the central easement since its inception, when the original grantors recorded the central easement intending it to include utilities. The trial court merely used the LDA as the tool to validate property rights that already existed. [*Tomecek*, 482 Mich at 495-495 (opinion by KELLY, J.) (citations omitted.]

This is the full extent of the Court's discussion of the LDA, and five justices were in agreement with respect to the principles quoted. See *id.* at 505 (opinion by YOUNG, J.).

In our opinion, the following principles can be gleaned from *Tomecek* and *Martin*: (1) the LDA itself does not provide an avenue for the circuit court to alter substantive property rights or to establish such rights if they are not already in existence; (2) the alteration of a plat in a judgment entered by a circuit court pursuant

to the LDA does not effectuate a change in substantive property interests and rights; (3) rather, the alteration of the plat in an LDA judgment is ordered so that the plat accurately reflects and conforms to property interests and rights already in existence; (4) the filing of an action under the LDA is the exclusive means available when seeking to vacate, correct, or revise dedication language in a recorded plat in order to achieve consistency between the plat and existing substantive property rights; (5) an LDA action will generally require the court to identify the nature, character, and scope of existing property rights and, at times, to resolve any underlying disputes on such issues so that the plat map can be properly revised if necessary; and (6) akin to quieting title, resolution of underlying disputes regarding the nature, character, and scope of existing property rights that could potentially lead to plat revisions may be undertaken in the context of an LDA action, but it is not mandatory.

In light of *Tomecek*, we conclude that while the LDA cannot be used as a vehicle to alter or create substantive property interests,[3] an LDA action *can* be used to obtain legal recognition of an alteration of such property interests, accomplished, for example, by way of adverse possession, resulting in a need to alter the plat map. The LDA requires a plaintiff to allege in the complaint the reason a plat alteration is being sought, MCL

---

[3] Even though the LDA instructs that a court may "vacate, correct, or revise all or a part of a recorded plat," MCL 560.221, this specific authority does not give a court the power to alter or create substantive property interests. Therefore, a party cannot properly file an LDA action demanding, for example, that he or she be given exclusive rights to a privately dedicated subdivision park simply on the basis that MCL 560.221 allows a court to alter a recorded plat. If the party could provide an independent, underlying legal basis establishing the right to exclusive use, the party could use the LDA to have the plat altered to reflect the property interest.

560.223(b), which reason could certainly be that application of the doctrine of adverse possession resulted in a change in existing substantive property interests. In *Gorte v Dep't of Transportation*, 202 Mich App 161, 168-169; 507 NW2d 797 (1993), this Court explained:

> Generally, the expiration of a period of limitation vests the rights of the claimant. It is further the general view with respect to adverse possession that, upon the expiration of the period of limitation, the party claiming adverse possession is vested with title to the land, and this title is good against the former owner and against third parties. Defendant argues the contrary view, that plaintiffs' possession of the property merely gave plaintiffs the ability . . . to raise the expiration of the period of limitation as a defense to defendant's assertion of title. Contrary to defendant's arguments, however, Michigan courts have followed the general rule that the expiration of the period of limitation terminates the title of those who slept on their rights and vests title in the party claiming adverse possession. Thus, assuming all other elements have been established, one gains title by adverse possession when the period of limitation expires, not when an action regarding the title to the property is brought. [Citations omitted.]

Thus, resolution of an adverse possession claim within an LDA action would not entail the circuit court altering existing substantive property interests through use of authority granted in the LDA, which is prohibited. Rather, resolution of an adverse possession claim would simply involve the court determining the nature, character, and scope of existing property rights, which may have been previously altered by operation of law under MCL 600.5801(4) and its associated doctrine of adverse possession.[4]

---

[4] Even if it can be said that the court is altering substantive property interests by finding in favor of an adverse possessor, as opposed to merely determining existing property interests that were previously altered by operation of MCL 600.5801(4), the alteration would still be proper within

*Tomecek* does not preclude a circuit court, within the context of an LDA action, from identifying the particular property interests actually held by the parties and from resolving any disputes on the matter. Indeed, in *Tomecek*, the chief question was whether the scope of a driveway easement described in a plat encompassed a right to run a sewer line through the grounds of the easement.[5] By declaring that the easement could be so utilized, the Court was not altering or creating substantive property rights by way of any LDA provision, but was instead merely formally recognizing or validating existing property rights. In reaching its conclusion, *Tomecek* had to resolve the parties' dispute regarding the scope of the easement, which required an examination of the intent of the original grantors, the plat map labeling of the easement, past use of the easement, the effect of a restrictive covenant on the easement, and other circumstances. *Tomecek*, 482 Mich at 490-496 (opinion by KELLY, J). Accordingly, *Tomecek* allows for a *bifurcated approach*, involving, first, a determination regarding the nature, character, and scope of the existing property interests being disputed by the parties and, second, an alteration of the plat map, if necessary, so that it is consistent with the property interests as determined by the court.

The fact that an adverse possession claim regarding property subject to an easement, held by subdivision lot owners and created by a private dedication in a recorded plat, *may be* part of an LDA action, however, does not require it to be so. One of the foci in *Martin*

---

an LDA lawsuit as long as it was based solely on adverse possession principles and not the LDA's provision allowing the court to vacate, correct, or revise a plat, MCL 560.221.

[5] "We must determine if the central easement running from Lake Shore Road to Lot 2 includes utility access, or if its use is strictly limited to ingress and egress." *Tomecek*, 482 Mich at 490 (opinion by KELLY, J).

was whether a private dedication in a plat filed in 1968 or thereafter was legally valid. The LDA issue was of secondary consideration. The plaintiffs in *Martin* expressly requested the court to remove, and to declare null and void, plat language regarding the outlot at issue. *Martin*, 469 Mich at 545. In other words, the plaintiffs specifically asked the court to "vacate, correct, or revise . . . part of a recorded plat." MCL 560.221; *Martin*, 469 Mich at 542-543. We conclude that *Martin* did not intend anything more to be read into its decision regarding the LDA than the unremarkable proposition that the filing of an LDA suit is necessary *when expressly seeking to alter the language in a recorded plat.* Here, plaintiffs did not expressly seek to alter a recorded plat.[6]

### III

Defendant also contends that the trial court clearly erred by finding that plaintiffs established adverse possession. We disagree. We review de novo summary dispositions. *Willett*, 271 Mich App at 45. Decisions regarding equitable claims are reviewed de novo, while the trial court's findings of fact are reviewed for clear error. See *Dyball*, 260 Mich App at 703.

### A

Defendant first contends that its status as a municipal corporation renders it immune, by statute, from an adverse possession claim to a public street, citing MCL 600.5821(2), which provides: "Actions brought by any municipal corporation for the recovery of the possession of any public highway, street, alley, or any other public

---

[6] Whether such action may be required following the issuance of this opinion is not expressly before us at this time.

ground are not subject to the periods of limitations."
Under this theory, defendant claims that because it is
not subject to the limitations period on which adverse
possession claims are based, it is not subject to adverse
possession claims for public roads, streets, or areas. We
disagree.

The Revised Judicature Act, of which MCL
600.5821(2) is a part, does not define "public streets."
Thus, this is an issue of statutory construction, and we
repair to well-established principles of statutory con-
struction. We begin our analysis by consulting the
specific statutory language at issue. *Provider Creditors
Comm v United American Health Care Corp*, 275 Mich
App 90, 95; 738 NW2d 770 (2007). This Court gives
effect to the Legislature's intent, as expressed in the
statute's terms, giving the words of the statute their
plain and ordinary meaning. *McManamon v Redford
Charter Twp*, 273 Mich App 131, 135; 730 NW2d 757
(2006). "When the language poses no ambiguity, this
Court need not look beyond the statute or construe the
statute, but need only enforce the statute as written."
*Id.* at 136. "This Court does not interpret a statute in a
way that renders any statutory language surplus-
age . . . ." *Id.*, citing *Pohutski v City of Allen Park*, 465
Mich 675, 684; 641 NW2d 219 (2002).

Under the unambiguous language of the statute,
defendant's argument lacks merit. Defendant has ar-
gued that its rights to Cross Street and North Street
arise from the *private* dedication in the plat and that its
rights derive from its status as an owner of lots within
the subdivision. Accordingly, by defendant's own admis-
sion, these are not public streets, and the statute does
not apply to them.

The caselaw interpreting and applying MCL
600.5821(2) does not compel a contrary conclusion.

*Mason v City of Menominee*, 282 Mich App 525, 527; 766 NW2d 888 (2009), involved the application of MCL 600.5821(2) to a dispute involving property owned by a city, but not by virtue of ownership of lots in a subdivision with privately dedicated streets. The opinion does not state how the city came to own the property, but describes the land as a public park. Presumably, therefore, the city owned the park land in fee simple, as public land.

Similarly, *Adams Outdoor Advertising, Inc v Canton Charter Twp*, 269 Mich App 365; 711 NW2d 391 (2006), does not compel a contrary result. In that case, the panel considered MCL 600.5821(2) within the context of an action to quiet title. Billboards were erected on the north side of Michigan Avenue, 500 feet east of Canton Center Road. The panel held that the trial court correctly granted the township summary disposition under MCL 600.5821(2). The panel relied on the "public ground" provision in that subsection. Finding that phrase ambiguous, the panel used doctrines for construction of statutes and dictionary definitions, broadly construing the phrase "public ground" to mean publicly owned property *open to the public for common use. Id.* at 370-371, 375. The panel held that plaintiffs could not bring an adverse possession claim to the public grounds at issue. *Id.* at 375.

*Adams Outdoor Advertising* is distinguishable. The case at bar involves privately dedicated streets "owned" by the township by virtue of its ownership of lots in the subdivision. There is no evidence that these streets were ever open to the public. There are no "public grounds" at issue here, and *Adams Outdoor Advertising* does not compel the conclusion that MCL 600.5821(2) bars plaintiffs' adverse possession claims. For the foregoing reasons, MCL 600.5821(2) does not bar plaintiffs'

adverse possession claims against privately dedicated streets owned by defendant only by virtue of its ownership of lots in the subdivision.

B

Defendant next argues that plaintiffs failed to prove the elements of adverse possession sufficiently for summary disposition. Again, we disagree.[7] To establish adverse possession, the claimant must show that his or her possession was actual, visible, open, notorious, exclusive, hostile, under cover of a claim of right, continuous, and uninterrupted for the statutory period of 15 years. *Wengel*, 270 Mich App at 92.

As we recognized earlier, the fact that an easement interest is at stake does raise somewhat the evidentiary burden in relation to the adverse possession analysis. "In Michigan[,] use of an easement by the owner of the servient estate will not ripen into adverse possession unless such use is inconsistent with the easement," thus leading to application of a heightened level of scrutiny in regard to a claim of adverse possession of an easement. *Nicholls*, 37 Mich App at 349.

---

[7] We note that, while the trial court held its evidentiary hearing under MCR 2.116(I) and then granted summary disposition in favor of plaintiffs pursuant to MCR 2.116(C)(10), MCR 2.116(I)(3) permits an immediate trial to resolve any disputed issue of fact only when the grounds asserted in support of summary disposition are based on subrules C(1) through (7). Nevertheless, because the parties have not challenged this procedure used by the trial court, which got right to the heart of the issue in dispute and expedited the resolution of the case, we simply point out the oddity of reviewing an order granting summary disposition under subrule C(10) that was entered only after the trial court made findings of fact integral to its order granting summary disposition. To this end, while our review of equitable claims, such as a claim for adverse possession, is de novo, *Dyball*, 260 Mich App at 703, we will review for clear error the factual findings made by the trial court in regard to the claim of adverse possession, *Grand Rapids v Green*, 187 Mich App 131, 135-136; 466 NW2d 388 (1991).

The evidence indicated that improvements were made to the areas in question. These longstanding improvements would give a titleholder notice that one or more lot owners were adversely possessing the area. For example, plaintiffs' barn partially blocked the area known as North Street. Plaintiffs maintained crops and private trails in the areas in question, planted trees, and maintained fencing along North and Cross streets. These activities and structures were further evidence of acts or uses inconsistent with any right to use the disputed property as a road. In light of the strong evidence of plaintiffs' uses inconsistent with the use of the areas as roads, we conclude that the trial court did not clearly err by finding that plaintiffs established clear and cogent proofs of possession that was actual, visible, open, notorious, exclusive, continuous and uninterrupted for the statutory 15-year period, hostile, and under cover of claims of right, and judgment in favor of plaintiffs was properly granted.

IV

The trial court did not err as a matter of law by concluding that plaintiffs were not required to bring their adverse possession claims under the LDA. Adverse possession applies against easements created by private dedications in a plat, even if the plat was recorded before January 1, 1968. MCL 600.5821(2) does not preclude plaintiffs' adverse possession claims against privately dedicated subdivision streets in which the township has interests solely by virtue of its ownership of lots within the subdivision. Finally, the trial court did not err by concluding that plaintiffs demonstrated sufficient proofs to satisfy all the elements of adverse possession.

Affirmed. Plaintiff Florence Beach, being the prevailing party, may tax costs pursuant to MCR 7.219.