*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SANDRA FLEGEL,

        Plaintiff/Counterdefendant-
Appellant/Cross-Appellee,

v

WILLIAM BERGHORST and JOYCE
BERGHORST,

        Defendants/Counterplaintiffs-
Appellees/Cross-Appellants.

UNPUBLISHED
June 9, 2022

No. 355181
Lake Circuit Court
LC No. 18-009533-CH

---

WILLIAM BERGHORST and JOYCE
BERGHORST,

        Plaintiffs-Appellees/Cross-Appellants,

v

LISA STOINSKI, ANDREW DRENTLAW, JIM
AND SANDY FOSTER REVOCABLE TRUST,
JAMES A. FOSTER, individually and as co-trustee,
SANDRA M. FOSTER, as co-trustee, and KELLY
M. MORRIS,

        Defendants-Appellants/Cross-
Appellees,

and

DUANE K. JOHNSON and LORRAINE A.
JOHNSON,

        Defendants.

No. 355183
Lake Circuit Court
LC No. 19-009677-CH

-1-

Before: BORRELLO, P.J., and JANSEN and MURRAY, JJ.

PER CURIAM.

In these consolidated appeals[1] involving a property dispute between neighboring land owners, plaintiff/counterdefendant Sandra Flegel, along with defendants Lisa Stoinski; Andrew Drentlaw; Jim and Sandy Foster Revocable Trust; James A. Foster, individually and as co-trustee; Sandra M. Foster, as co-trustee; and Kelly M. Morris appeal as of right from the trial court's judgment ruling that the disputed property belongs to defendants/counterplaintiffs William and Joyce Berghorst pursuant to the theories of adverse possession and acquiescence.[2] We conclude that the trial court did not err when ruling in favor of the Berghorsts, and therefore we affirm the judgment.

## I. FACTS AND PROCEDURAL HISTORY

This property dispute involves generally undeveloped land in Lake County. In 1956 the Porter-Mulder Land Company platted the area that would become known as Pine River Hills, and the plat included a map depicting the specific lots within Pine River Hills. According to the map, the western border for Lots 16 through 20 is a natural feature called Coe Creek. However, the plat map depicts the creek incorrectly. The map shows the creek in a straight line running diagonally on the western edges of Lots 16 to 20, while the creek actually meanders and winds through those lots.

Flegel has been the owner of Lot 18 within Pine River Hills since June 2016. The Fosters and Morris[3] own the south half of Lot 16, which they obtained from James and Morris's mother, Margaret Foster, in September 1982. Stoinski and her son, Drentlaw, own Lot 17, which was obtained from Stoinski's parents on March 14, 2018.[4]

The Berghorsts own a parcel of land located west of Pine River Hills. William "Bill" Berghorst received the property on October 9, 1997, from his father, Laverne Berghorst. The Berghorst property was described as follows:

---

[1] *Flegel v Berghorst*, unpublished order of the Court of Appeal, entered November 9, 2020 (Docket No. 355181).

[2] The Berghorts filed a cross-appeal, asserting that if this Court concludes that the judgment was erroneously entered, the trial court's previous orders granting summary disposition pursuant to MCR 2.116(C)(10) (no genuine issue of material fact) in favor of Flegel and the other defendants in regard to the issue of superior title were improper.

[3] Morris is James Foster's sister.

[4] The owner of Lots 19 and 20 deeded the portions of the lots west of Coe Creek to the Berghorsts because he did not wish to participate in the litigation.

All that part of the East ½ of Section 34, Town 20 North, Range 11 West, lying northwesterly of the thread of Coe Creek (being all that part of the East ½ of Section 34, except the Plat of Pine River Hills), Dover Township, Lake County, Michigan.

The Berghorst property was originally purchased from the Porter-Mulder Land Company in 1964 by Loretta B. Gates, who sold the property to Laverne and his wife, Katherine, that same year. In a letter that Gates sent to Laverne in response to his interest in the property, Gates explained that the property was "pie shaped with the widest part on Coe Creek, 1300." She described Coe Creek as an approximately 20-foot wide trout stream.

The current dispute involves the ownership of land located west of Coe Creek and inside the calculated dimensions of the Pine River Hills plat. The Berghorsts believed that their lot extended to the "thread of Coe Creek," and as a result, the family made several improvements to the land close to the creek, such as building a cabin across the creek on Lots 19 and 20, bringing in electricity, drilling a well, maintaining trails, and building deer blinds and tree stands. However, the owners of lots within Pine River Hills also believed that their lots extended west of Coe Creek, and they too would utilize the area for hiking, mushroom hunting, fishing, deer hunting and other recreational activities.

Flegel eventually obtained a survey of her property, which showed that it extended west of Coe Creek. She filed a complaint for quiet title and injunctive relief against the Berghorsts in relation to the land located west of Coe Creek. In response, the Berghorsts filed a counterclaim, asserting that they were the true owners of the disputed property, either by superior claim of title or by the doctrines of adverse possession and acquiescence. The parties subsequently filed competing motions for summary disposition concerning the superior claim of title. The trial court granted the motion in favor of Flegel, determining that she had superior title to the full dimensions of Lot 18 because the specific designation in the plat took preference over the map. The court also noted that the plat did not specify that the lot ended at the creek's edge. The Berghorsts then filed a substantially similar complaint against Stoinski and Drentlaw, and the Fosters and Morris. These neighboring landowners filed a counterclaim for quiet title and injunctive relief, asserting the same claims raised by Flegel in her initial complaint. The parties again filed cross-motions for summary disposition in regard to the superior title issue, and the court again found in favor of the lot owners.

The case proceeded to a bench trial concerning the adverse possession and acquiescence claims. After three days of testimony, the trial court issued a written opinion, concluding that the Berghorsts were the legal owners of the disputed property pursuant to either adverse possession or acquiescence. The lot owners of Pine River Hills now appeal from the court's corresponding judgment.

## II. ANALYSIS

### A. STANDARD OF REVIEW

"The circuit court's findings of fact, if any, following a bench trial are reviewed for clear error, while its conclusions of law are reviewed de novo." *Ladd v Motor City Plastics Co*, 303 Mich App 83, 92; 842 NW3d 388 (2013). "The clear-error standard requires us to give deference to the lower court and find clear error only if we are nevertheless left with the definite and firm conviction that a mistake has been made." *Arbor Farms, LLC v GeoStar Corp*, 305 Mich App

374, 386-387; 853 NW2d 421 (2014) (quotation marks and citation omitted). "A claim for adverse possession is equitable in nature." *Beach v Lima Twp*, 283 Mich App 504, 508; 770 NW2d 386 (2009), aff'd 498 Mich 99 (2011). "And decisions regarding equitable claims, defenses, doctrines, and issues are reviewed de novo." *Id*.

## B. ADVERSE POSSESSION

The lot owners assert that the trial court erred by not considering whether the Berghorsts' occupancy was sufficient to meet the elements of adverse possession as to each individual lot.

"A party claiming adverse possession must show clear and cogent proof of possession that is actual, continuous, open, notorious, exclusive, hostile, and uninterrupted for the relevant statutory period." *Marlette Auto Wash, LLC v Van Dyke SC Props, LLC*, 501 Mich 192, 202; 912 NW2d 161 (2018). The statutory period is 15 years. See *id*. at 201 and MCL 600.5801(4). "When the elements of adverse possession have been met, the law presumes that the true owner, by his acquiescence, has granted the land, or interest to the land, so held adversely." *Marlette Auto Wash, LLC*, 501 Mich at 202 (quotation marks and citation omitted).

The lot owners principal argument is that the trial court erred by treating the disputed area as one section of property and not considering their respective lots separately in its determination that the Berghorsts were successful with their adverse possession claim. To this point, appellants point out that activities such as building the cabin and driveway occurred on or near Lot 19, and at the time of trial, the owner of Lots 19 and 20 deeded the section west of the creek to the Berghorsts. Thus, Lots 19 and 20 were not in dispute at trial.

Though this factual situation is true, the Berghorsts nevertheless presented evidence of their use and improvements that occurred on Lots 16, 17, and 18 to the west of the creek. There was also testimony that visitors to the property would walk, hunt, and fish along the entirety of the west side of Coe Creek. In other words, the witnesses suggested that their activities were not confined to one specific area but instead included the lands west of Coe Creek along Lots 16-18.

## 1. ACTUAL

"[O]ne claiming title by adverse possession must show positive and affirmative acts of ownership. Mere occasional trespasses are not sufficient." *Barley v Fisher*, 267 Mich 450, 453; 255 NW 223 (1934). In addition, "[t]he nature of the acts necessary to constitute adverse possession depends to large extent upon the character of the premises." *Id*. at 452.

The evidence showed that the Berghorsts and their guests physically used the land in a way that was reasonable on the basis of the land's character. *Id*. See also *Jonkers v Summit Twp*, 278 Mich App 263, 274; 747 NW2d 901 (2008) (explaining that "the fact that the township only occasionally did anything on the property is consistent with the area's character as relatively undeveloped and predominantly seasonally occupied"). Specifically, the testimony presented at trial showed that the property in question consisted of mostly undeveloped woodlands and Coe Creek, which was described as a trout stream that was 10 to 20 feet wide. Accordingly, with some exceptions, all the property owners generally used the area for leisure and recreational activities as opposed to full-time residences or commercial ventures. Moreover, the testimony showed that the Berghorsts and their guests used the areas west of the creek on Lots 16, 17, and 18 for activities

such as hiking, hunting, and fishing ever since Laverne purchased the property in 1964. Indeed, Bill's son, John Berghorst, testified that he maintained the area west of the creek and kept it trimmed so that Bill could fish and that Bill typically fished in the area between Lots 18 and 19. In 2002 or 2003, Bill built a permanent tree stand on Lot 18. He also placed a trail camera and deer feeder on Lot 17, and cleared an area for a food plot for deer. He also maintained a U-shaped trail that traversed Lots 16 and 17, that at least Bill used. The trial court did not clearly err in finding actual use of the disputed lands.

## 2. EXCLUSIVE

To demonstrate exclusive possession, the adverse possessor must openly exercise acts of ownership "with the intention of holding the property as his own to the exclusion of all others." *Smith v Feneley*, 240 Mich 439, 442; 215 NW2d 353 (1927). "Possession refers to an exercise of dominion over the property, and there may be degrees even in the exclusiveness of the exercise of ownership." *Jonkers*, 278 Mich App at 274-275 (quotation marks and citation omitted).

There was testimony presented at trial showing that the Berghorsts used the disputed property with the intention to exclude others. For one, the driveway leading to the Berghorst cabin was protected by a cable, and the property's northern and southern borders had fences. Bill explained that there was a bridge crossing Coe Creek when Laverne purchased the property, but Laverne removed it. In addition, Bill observed a man hunting in the area west of the creek around 2000, and he told the man that he owned the property leading to the creek and that the man could not hunt in that area. Bill later compared his deed to the deed of the owner of the adjacent property. After that confrontation, Bill placed no trespassing signs on the south portion of Lot 16. Bill also stated that he went and spoke to the previous owner of Lot 18 in regard to his ownership of the land leading up to the creek.

On the other hand, there was also testimony that the landowners of lots in Pine River Hills also used the land west of the creek. Many testified that they went across the creek to hunt, fish, hike, and pick mushrooms. Stoinski asserted that there had been a bridge across the creek, but it was destroyed by a storm. Bill also acknowledged that some of the no trespassing signs had been removed. In any event, giving deference to the trial court's consideration of the testimony and other evidence, the trial court did not err by concluding that the Berghorsts had occupied the disputed property to the exclusion of others, especially considering the property's character—a forested area leading to a large creek. See *Arbor Farms, LLC*, 305 Mich App at 386-387, and *Jonkers*, 278 Mich App at 275 (holding that "[w]hen viewed in the context of the character of the premises, the township's acts that unambiguously communicated to the public that it was the owner of a public boat launch constitute acts of dominion over the property that excluded any dominion the [owners] had over the property.").

## 3. OPEN AND NOTORIOUS

To support an adverse possession claim, "it is sufficient if the acts of ownership are of such character as to indicate openly and publicly an assumed control or use such as is *consistent with the character of the premises in question.*" *Houston v Mint Group, LLC*, 335 Mich App 545, 560; 968 NW2d 9 (2021). Here, John testified that he maintained trails on Lots 16, 17, and 18 for Bill to use. He trimmed the west side of the creek with a weed trimmer and chainsaw so that Bill could

fish, and he placed a culvert on Lot 17 to help with drainage. He built a permanent tree stand on Lot 18, and Bill, along with his brothers James and Robert Berghorst, removed large rocks and wood from the creek. The Berghorst family and their friends consistently hunted, fished, and hiked at the property since 1964. Moreover, the previous owner of Lot 18 testified that he observed a tree stand on the west side of the creek while he owned the property. He also knew that the Berghorsts hunted and fished on the west side of the creek. Stoinski and Drentlaw had observed the culvert and acknowledged that it had been there for many years. They were also aware of the "antler trap," although they were under the impression that it was part of an old garden. And importantly, the evidence showed that Bill, on several occasions, asserted to the owners of some of the lots that he owned all the land west of the creek. As a result, the evidence supported the trial court's finding that the Berhorsts' use of the property west of the creek for fishing, hunting and gathering was open and visible to the Pine River Hills landowners. See *id*.

### 4. ADVERSE AND HOSTILE

> The term "hostile" as employed in the law of adverse possession is a term of art and does not imply ill will; rather, hostile use is that which is inconsistent with the right of the owner, without permission asked or given, and which would entitle the owner to a cause of action against the intruder. [*Id*. at 559 (quotation marks and citations omitted).]

In addition, "erroneously believing that a preexisting monument—either artificial or natural—represents the boundary and holding to that monument can satisfy the hostility element." *Id*. at 560.

There was significant testimony presented to the trial court illustrating that the Berghorsts and their guests believed that the property extended to the middle of Coe Creek, and that they treated the creek as the boundary between their property and Pine River Hills. There was also testimony that the Berghorts fished, hunted, hiked, and played in the disputed area. Accordingly, there was ample evidence to support the trial court's conclusion that the Berghorsts' use of the disputed property had been hostile. See *id*.

### 5. CONTINUOUS FOR STATUTORY PERIOD

In regard to the requirement that the possession of the property must be continuous for the 15-year statutory period, daily use is unnecessary as long as the use is consistent with the character of the property. *Dummer v US Gypsum Co*, 153 Mich 622, 632-633; 117 NW 317 (1908). "[S]uccessive periods of adverse possession by different parties can be joined or 'tacked' to satisfy the 15-year statutory period, but only if there was privity of estate." *Houston*, 335 Mich App at 560. The evidence presented at the bench trial established that the Berghorsts had used the disputed property west of the creek since the property was purchased by Laverne in 1964. In addition, John testified to the additional improvements that he made to the trails and west bank of the creek since the early to mid-1990s. As a result, the Berghorsts use of the property west of the Coe Creek for recreational activities was continuous for at least 15 years. See *Dummer*, 153 Mich at 632-633.

Although the neighboring landowners testified that they also made similar recreational use of the land west of Coe Creek, the trial court concluded that the Berghorsts' use had been more significant and continuous for a longer period. Considering that the Berghorsts used the disputed property on Lots 16, 17, and 18 for seasonal recreational activities, such as fishing and hunting, since Laverne purchased the property in 1964, and had placed large and smaller structures and made improvements to the land and creek, we cannot conclude that the trial court erred by ruling that the Berghorsts had successfully established the elements of adverse possession. See *Arbor Farms, LLC*, 305 Mich App at 386-387.[5]

Affirmed.

/s/ Stephen L. Borrello
/s/ Kathleen Jansen
/s/ Christopher M. Murray

---

[5] Because we conclude that the Berghorsts successfully established that they were the legal owners of the disputed property on the basis of adverse possession, it is unnecessary for this Court to consider the remaining claims presented in these appeals.