*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MICHAEL DUPREE and DARLENE DUPREE,

    Plaintiffs/Counterdefendants-
    Appellants,

v

DAVID OPPLIGER and KRISTINE OPPLIGER,

    Defendants/Counterplaintiffs/Third-
    Party Plaintiffs-Appellees,

and

JAMES SMELTZER, PATRICIA SMELTZER,
TIMOTHY HOGAN, CHRISTOPHER HOGAN,
JEFFREY LONDON, FRANCINE L. ROBINSON-
LONDON, SUSAN M. DAVIS, JOSEPH PIERCE,
RICHARD HOWARD DAVIS, JUDITH ANN
DAVIS, JAMES WENZLOFF, JEAN WENZLOFF,
WILLIAM A. HORNBY, SANDRA K. HORNBY,
ERNEST R. HAMM, KATHERINE ANN HAMM,
REVOCABLE TRUST AGREEMENT OF
ROBERT L. ANGE AND MARJORIE L. ANGE,
NS BEACH PROPERTIES LLC, JAMES
SCHOFFNER, BETHANY SCHOFFNER,
DARLENE PETERSON, JANET LEE WILSON,
SANDRA L. MEYERS, ROBERT MCKENZIE,
PATRICIA MCKENZIE, MICHELLE KINNA,
SUSAN M. SMITH TRUST, JULIAN GO JR. M.D.
REVOCABLE LIVING TRUST, JOHN GOUDY,
LINDA GOUDY, CHARLES E. LANGOLF AND
THERESA M. LANGOLF REVOCABLE TRUST,
DEBRA MINOR, DONALD C. HUGHES, RENEE
C. HUGHES, and CHRISTOPHER SMELTZER,

    Third-Party Defendants.

UNPUBLISHED
December 03, 2025
2:40 PM

No. 370469
St. Clair Circuit Court
LC No. 21-000754-CH

Before:  K. F. KELLY, P.J., and BORRELLO and CAMERON, JJ.

PER CURIAM.

Plaintiffs appeal as of right the trial court's judgment awarding certain disputed property to defendants.  We affirm.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs and defendants are next door neighbors who own adjacent beachfront properties. Defendants bought their home in 1990, and plaintiffs bought their home in 1995—having lived in the same neighborhood but farther away from defendants since 1989.  Defendants' home occupies a single plat with a width of 25 feet.  Plaintiffs' home occupies a double plat with a width of 50 feet.  The homes are very close to one another, with the parties estimating a space of between three to four feet between them.

Defendants' home had a concrete patio attached to it when they bought it in 1990. Defendants introduced evidence that the patio existed since at least 1968.  It is undisputed that the patio's footprint encroached on the common beach area dedicated to all homeowners in the neighborhood.  Defendants remodeled their home twice between 1990 and 1993.  During this time, defendants added a door at the back of their home leading to the patio, and added stairs leading from the door to the patio surface.  Sometime between 2000 and 2004, defendants constructed a wooden deck on top of the patio.  The deck did not expand the patio's footprint.

In 2008, either because she first observed the new deck at this time, or because the deck was brought to her attention because of a new survey conducted by her neighbors on the other side of her home, plaintiff Darlene Dupree confronted defendant David Oppliger about the deck, which Darlene contended was encroaching on plaintiffs' land.  After plaintiff Michael Dupree also confronted David about the deck, David wrote plaintiffs a letter which stated:

> A survey of your property showed that part of the deck Kristine and I built between our two homes extends over your property.
>
> Please be advised that we acknowledge the surveyed property line and we will not use any part of your property in any way that is adverse to your property interests.

Plaintiffs contended they relied on this letter to protect their interests, and, as a result, they did not take any action to force defendants to remove the deck until 2021, when defendants were planning to make repairs to the deck.  Plaintiffs' resulting lawsuit alleged that defendants' deck trespassed on plaintiffs' property and the general beach property, and sought declaratory judgment. Defendants filed a countercomplaint alleging they had adversely possessed the disputed areas or that they had acquired title to the areas under the doctrine of acquiescence.

Darlene, Michael, and David were the only three witnesses to testify at the resulting bench trial.  After trial, the trial court described the issue as "quite simple[,]" in that defendants' "title to that area vested long before there was ever an issue with the new decking."  It found that

-2-

defendants' use of the patio predating the deck satisfied all the requirements of adverse possession, and found plaintiffs' testimonies incredible. Even without tacking from defendants' predecessors, defendants satisfied the 15-year statutory period for adverse possession by 2005, 15 years after they bought their home in 1990. The trial court found it was not necessary to address the 2008 letter because title had already vested by that time. The trial court nevertheless described the letter as vague. Plaintiffs now appeal.

## II. STANDARDS OF REVIEW

"Actions to quiet title are equitable in nature, and equitable rulings are reviewed de novo." *Houston v Mint Group, LLC*, 335 Mich App 545, 557; 968 NW2d 9 (2021). A trial court's factual findings after a bench trial are reviewed for clear error. *Walters v Snyder*, 239 Mich App 453, 456; 608 NW2d 97 (2000). "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed." *Id*. The trial court's conclusions of law are reviewed de novo. *Id*.

## III. ANALYSIS

Plaintiffs argue that the trial court erred in finding that defendants had adversely possessed both the general beach area and plaintiffs' property. We disagree.

"Ordinarily, an action for the recovery or possession of land must be brought within 15 years after it accrues." *Houston*, 335 Mich App at 558, citing MCL 600.5801(4).

> A claim of adverse possession requires clear and cogent proof that possession has been actual, visible, open, notorious, exclusive, continuous, and uninterrupted for the statutory period of fifteen years. These are not arbitrary requirements, but the logical consequence of someone claiming by adverse possession having the burden of proving that the statute of limitations has expired. To claim by adverse possession, one must show that the property owner of record has had a cause of action for recovery of the land for more than the statutory period. A cause of action does not accrue until the property owner of record has been disseised of the land. MCL 600.5829. Disseisin occurs when the true owner is deprived of possession or displaced by someone exercising the powers and privileges of ownership. [*Houston*, 335 Mich App at 558-559 (quotation marks and citation omitted).]

"The term hostile . . . does not imply ill will; rather, hostile use is that which is inconsistent with the right of the owner, without permission asked or given, and which would entitle the owner to a cause of action against the intruder." *Id*. at 559 (quotation marks and citations omitted).

> Where a landowner possesses the land of an adjacent owner with the intent to hold to the true line, the possession is not hostile and cannot establish adverse possession. By contrast, where a person possesses the land of another intending to hold to a particular recognizable boundary regardless of the true boundary line, the possession is hostile and adverse possession may be established. Simply being mistaken with regard to the true boundary line, however, does not defeat a claim of adverse possession. As noted by this Court . . . , it would be unjust to limit the

application of the doctrine of adverse possession to those adverse possessors who knew the possession was wrong, while excluding those whose possession was by mistake, thereby rewarding the thief while punishing the person who was merely mistaken[.] [*Id*. at 559-560 (quotation marks and citations omitted).]

Furthermore:

"In order to support a claim of title by adverse possession, acts of possession must be open and of a hostile character, but it is sufficient if the acts of ownership are of such a character as to indicate openly and publicly an assumed control or use such as is consistent with the character of the premises in question." [*Id*. (quotation marks, emphasis, and citation omitted).]

The trial court correctly found that all elements of adverse possession were satisfied.

The trial court found that the statutory time frame for possession began, even without tacking,[1] when defendants bought the house in 1990. The bulk of plaintiffs' argument is that the time frame did not begin to run until the deck was installed, because the patio was not hostile or exclusive. This argument fails, because, even ignoring tacking, defendants' exclusive use of the patio as their own, personal outdoor living space began in 1990 when they bought the house. Defendants openly kept their barbeque and deck chairs on the patio and had exclusive control over, and financial responsibility for, the lamps on the patio. The patio was attached to defendants' home, and, contrary to Darlene's incredible and disproven testimony, was directly accessible from defendant's home via a door and stairway installed sometime between 1990 and 1993. Defendants' acts of possession were, therefore, open and notorious, and "of such a character as to indicate openly and publicly an assumed control or use as is consistent with the character of the premises in question." *Houston*, 335 Mich at 560 (quotation marks, emphasis, and citation omitted).

As for the disputed area encroaching on plaintiffs' property, the trial court reasonably found that the pathway between the parties' homes that terminated at the stairs leading to the patio was far more consistent with defendants' exclusive use than plaintiffs'. Plaintiffs' only claimed uses of the area were for occasional cleaning, beach access, and boat storage. While it is at least believable that Darlene may have helped clean the area between the parties' homes or used it to access areas of her own home to clean, as the trial court noted, this occasional use was insufficient to defeat defendants' exclusive use. See *Waisanen v Superior Twp*, 305 Mich App 719, 732; 854 NW2d 213 (2014). Similarly, the trial court reasonably found that the other two uses claimed by plaintiffs were illogical and impractical. Plaintiffs had a much larger area on the other side of their home by which they could access the beach themselves or store their boat and access the beach without having to drag it up and down the steps of a concrete patio. Any use of the narrow, three-

---

[1] "[S]uccessive periods of adverse possession by different parties can be joined or 'tacked' to satisfy the 15-year statutory period, but only if there was privity of estate." *Houston*, 335 Mich App at 560. The trial court declined to, and did not need to, consider whether defendants' time tacked on to the time of their predecessors, because their own ownership was long enough to satisfy the period without assistance.

to four-foot space between the parties' homes was incidental at best, concerning plaintiffs' individual use, and wholly illogical at worst, concerning the boat. As the trial court recognized, defendants did not need to erect fences or barriers. The pathway's nature and use, as well as the inconvenience it posed to plaintiffs' alleged uses, was enough to demonstrate exclusive use of the area.

As for hostility, defendants testified that they had understood the boundary line to be where four pillars lined up with the ledge on the outside of the patio. Plaintiffs attempt to circumvent this testimony by emphasizing that they never held the same opinion. However, the rule set forth in *Houston* does not require mutual mistake:

> [W]here a person possesses the land of another intending to hold to a particular recognizable boundary regardless of the true boundary line, the possession is hostile and adverse possession may be established. Simply being mistaken with regard to the true boundary line, however, does not defeat a claim of adverse possession. [*Houston*, 335 Mich App at 559-560 (quotation marks and citations omitted).]

Defendants' testimony of their intent to hold the boundary line they perceived as being marked by the pillars and patio ledge, even if only based on innocent mistake, was, therefore, sufficient to establish hostility.

In sum, defendants' use of the patio, beginning in 1990, was "actual, visible, open, notorious, exclusive, continuous," and hostile for the requisite 15-year period.[2] Moreover, because title had long since vested by the time David wrote the 2008 letter, its contents need not be addressed.[3]

---

[2] Because the trial court properly determined that defendants had adversely possessed both contested areas, we need not address the issue of acquiescence.

[3] Plaintiffs also argue the trial court failed to consider the proper burden of proof when considering the beach disputed area. Because defendants had the right to be on the beach disputed area, their easement rights "somewhat alter the evidentiary burden in relation to the adverse possession analysis." *Beach v Lima Twp*, 283 Mich App 504, 514; 770 NW2d 386 (2009). "In Michigan, use of an easement by the owner of the servient estate will not ripen into adverse possession unless such use is inconstant with the easement." *Id*. (quotation marks, brackets, and citation omitted). While the trial court did not expressly note this somewhat altered standard, it can be easily inferred from the trial court's findings that defendants' use of the patio as their own personal living space was inconsistent with the easement of the communal beach. Thus, while the trial court may not have expressly held defendants to this standard, its findings necessarily demonstrate that the standard was satisfied.

Affirmed.

/s/ Kirsten Frank Kelly
/s/ Stephen L. Borrello
/s/ Thomas C. Cameron