*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

FIFTH THIRD BANK,

       Plaintiff-Appellee,

v

EMC2, INC. and KENNETH C. DARGATZ,

       Defendants,

and

CHARRINGTON ESTATES, LLC,

       Appellant,

and

MARK KASSAB, Receiver,

       Appellee,

and

OAKLAND COUNTY TREASURER and
MCNAUGHTON-MCKAY ELECTRIC
COMPANY,

       Other Parties.

UNPUBLISHED
April 8, 2021

No. 351608
Oakland Circuit Court
LC No. 2017-158718-CB

Before: MURRAY, C.J., and JANSEN and STEPHENS, JJ.

PER CURIAM.

-1-

Appellant Charrington Estates, LLC (Charrington) appeals as of right the order for default judgment against defendants EMC2, Inc. (EMC2) and Kenneth Dargatz, the order limiting Charrington's request for rent, and the order denying Charrington's request for removal expenses. We affirm.

## I. BACKGROUND

The dispute in this case arises from a court-ordered receivership which was established during litigation between plaintiff Fifth Third Bank and defendants, who were tenants in a building owned by Charrington. In 2013, the defendants opened a credit card account with Fifth Third Bank which went into default. Later that year, EMC2 entered into a lease with Charrington for 77,000 square feet inside an Auburn Hills building that Charrington owned. Also, in December 2015 and September 2016, EMC2 executed two notes to plaintiff totaling $1 million. As collateral, EMC2 signed a security agreement pleading all of its assets as collateral, and Dargatz, EMC2's president and majority shareholder, provided an unconditional guaranty. Ultimately, EMC2 abandoned its property in the Charrington building. Later, court-appointed receiver Mark Kassab used the space to secure and ultimately auction EMC2's assets to settle certain debts.

Plaintiff Fifth Third Bank initiated this case against defendants EMC2 and Dargatz on May 11, 2017. Plaintiff alleged that defendants were in default by failing to provide required financial information and information regarding entry of a judgment against EMC2, failing to maintain a debt service ratio and to timely pay the credit card, and because of an adverse material change in defendants' financial conditions. Plaintiff sought $916,048.23 plus accrued but unpaid interest, flat fees, late fees, and costs due under various agreements. However, the parties later reached an extension and consolidation agreement, pursuant to which a stipulated order dismissing plaintiff's complaint without prejudice was entered. At the same time, defendants executed a stipulated order reopening the case and for entry of a consent judgment, as well as an order to seize property; they agreed that these orders could be entered with the trial court without a hearing in the event they defaulted again. Accordingly, the stipulated order provided that the trial court retained jurisdiction over the case "for purposes of enter[ing] a Stipulated Order Re-Opening Case and for Consent Judgment if necessary".

An amended lease between appellant Charrington and defendant EMC2 was executed in December 2018. It provided a lease term of March 31, 2019 through March 31, 2024. The monthly base rent for the relevant time period was $37,927.50. However, EMC2 failed to pay rent as required by the lease, so Charrington initiated suit in district court. Charrington eventually obtained a default judgment against EMC2 on May 3, 2019, and obtained an order of eviction on May 17, 2019. However, shortly after appellant Charrington obtained its order of eviction, on May 24, 2019, plaintiff Fifth Third Bank moved to reopen this case and sought entry of the previously executed consent judgment and the appointment of a receiver. By this time, EMC2 had multiple tax liens, judgments, and garnishments entered against it. EMC2 was insolvent, had terminated all of its employees, and had ceased operations. Also, Dargatz had resigned as

president.[1]  Plaintiff sought the receiver to preserve, protect, inventory, sell, and liquidate all of the collateral.  On June 6, 2019, the trial court entered an order granting in part plaintiff's motion to reopen and granting plaintiff's motion for appointment of a receiver.  The court appointed Kassab as the receiver and Kassab subsequently moved for an order authorizing him to enter into an agreement for an auction sale of the receivership property.

On July 10, 2019, appellant Charrington filed a motion seeking reimbursement for the receiver's continued use of the space in Charrington's building that held EMC2's property.  Charrington asserted that this use constituted a receivership expense and sought an order requiring the receiver to pay $43,468.50 per month, beginning June 5, 2019 and until the receiver surrendered the premises to Charrington.  Charrington calculated the amount of rent it sought from the contracted rent in its rental agreement with EMC2.

Plaintiff Fifth Third Bank's counsel responded that a receivership was an equitable proceeding and suggested that "[t]he most reasonable and equitable way to deal with this issue is on a pro rate basis.  Plaintiff advised that the auctioneer had guaranteed that plaintiff would receive $115,000 from the auction, but that plaintiff would be required to pay the receiver's and auctioneer's costs and the costs to move the equipment, so plaintiff would not net $115,000.  Plaintiff noted that $115,000 was 24% of what plaintiff was owed, and suggested that Charrington be granted 24% of what it was owed.  Plaintiff argued that it "would not be equitable" for Charrington to jump ahead of plaintiff, who was paying for the auction, and receive more than plaintiff.  Plaintiff further contended that, if asked, the receiver would likely state that $44,000 per month was not a reasonable rate for storing equipment.  Plaintiff agreed that Charrington was entitled to some compensation, but reiterated that "it would be inequitable" for Charrington to receive $88,000 when plaintiff was going to receive less than $115,000 and pay for all of the expenses, and again requested that Charrington receive a pro-rated share.

Charrington replied that it would be inequitable for those working for the receiver to be left "holding the bag" just so that creditors could receive more.  Charrington argued that priority only applied after all of the receivership's fees were paid, and that those fees should not be reduced "because the bank wants a larger portion of the pie".  Charrington also argued that its premises had a fair-market rental rate, as established by the arm's-length rate in the lease with EMC2, and that the fact that the receiver was not using the property in the same way that EMC2 had been using it did not change the property's fair-market rental rate.  The trial court ultimately ordered that the receiver would pay Charrington 24% of whatever was recovered by the receiver, after costs were deducted, for the receiver's use of Charrington's premises.

On July 31, 2019, plaintiff Fifth Third Bank filed a default against defendant EMC2.  That same day, appellant Charrington filed a motion seeking entry of an order consistent with its interpretation of the trial court's decision, and another motion seeking a stay; it sought to prevent the receiver from disbursing any funds, other than those necessary for the auctioneer's expenses,

---

[1] In early June 2019, the trial court received notice that Dargatz had filed for bankruptcy, and entered an order administratively closing the case without prejudice as to Dargatz only, leaving the case against EMC2 open.

to preserve the remaining funds in the event this Court reversed the trial court's ruling on Charrington's motion for payment of expenses.

On August 7, 2019, the trial court held a hearing on both of Charrington's motions. The trial court stated that it was not sure there was really any meaningful distinction between Charrington's status as a creditor of EMC2 and its status as an alleged provider to the receiver, but acknowledged that Charrington was not seeking a judgment against EMC2. It also thought a stay would be an exercise in futility because there was unlikely to be enough money in the receivership to pay anyone what they were owed. However, it also agreed with plaintiff that a stay was not appropriate because the receiver was required to come before the trial court to request disbursement and the trial court could decide at that time which debtors to pay first. Accordingly, the trial court denied Charrington's motion for a stay.

Orders consistent with the trial court's rulings were entered on August 12, 2019. Charrington immediately sought leave to appeal the trial court's order regarding payment by the receiver. On October 10, 2019, this Court denied Charrington's application for leave to appeal. *Fifth Third Bank v EMC2, Inc*, unpublished order of the Court of Appeals, entered October 10, 2019 (Docket No. 350163).

On October 16, 2019, Charrington filed a motion for payment of receivership expenses in which Charrington sought over $40,000 from the receiver to pay for cleaning the premises and safe disposal of chemicals left behind after the receiver relinquished control of the premises. On October 18, 2019, a stipulated order disbursing funds to the receiver and discharging his bond was entered. The trial court held a hearing on Charrington's new request on October 23, 2019. The trial court held that the receiver was not placed to take charge over the leasehold interest, but only to take possession of EMC2's assets and to liquidate those assets, and the receiver did not take possession of or liquidate the leasehold interest. Moreover, the court noted that there was no indication by Charrington regarding which items complained of had been left by EMC2 and what, if anything, had not been there before the receiver ever entered the picture. Accordingly, the trial court denied Charrington's motion.

On November 13. 2019, plaintiff moved for a default judgment against EMC2, sought an order of possession, payment of attorney fees and costs, and sought entry of an order disbursing the remaining proceeds. The trial court granted plaintiff's motion in its entirety. The final order disbursed the proceeds, with Charrington receiving $18,097.73 and plaintiff Fifth Third Bank receiving $57,309.46, and closed the case against EMC2.

On appeal, Charrington challenges the trial court's orders for default judgment and for the payment of the expenses of the receivership.

## II. STANDING

Before we consider the issues raised by Charrington, we must first address plaintiff's assertion that Charrington lacks standing to bring this appeal.

### A. STANDARD OF REVIEW

THIS COURT REVIEWS DE NOVO "WHETHER A MATTER IS PROPERLY PLACED BEFORE A COURT BY A PERSON WITH STANDING," AS WELL AS THE INTERPRETATION OF COURT RULES. *MATTHEW R ABEL, PC V GROSSMAN INVESTMENTS CO*, 302 MICH APP 232, 237; 838 NW2D 204 (2013). B. ANALYSIS

This is not an issue of "standing." "[T]he term 'standing' generally refers to the right of a plaintiff to initially invoke the power of a trial court to adjudicate a claimed injury." *Olsen v Jude & Reed LLC*, 325 Mich App 170, 180; 924 NW2d 889 (2018). For an appeal, the issue is whether the appellant is an "aggrieved party." See *id.* at 181; MCR 7.203(A). See also *Federated Ins Co v Oakland Co Road Comm'n*, 475 Mich 286, 291; 715 NW2d 846 (2006) (discussing similarities between issues of standing and being an aggrieved party for purposes of appeal).

Plaintiff argues that Charrington lacks standing to appeal the trial court's order because it never moved to intervene in the case. Plaintiff is correct that MCR 2.209 requires an interested party to apply to intervene in a lower-court case to be heard. See also MCR 2.622(H) (applying MCR 2.209 to receivership cases). However, neither intervention nor party status is required for this Court to have jurisdiction over an appeal. MCR 7.203(A) provides this Court with jurisdiction over an appeal as of right if an "aggrieved" party timely files a claim of right from the lower court's decision. "To be aggrieved, one must have some interest of a pecuniary nature in the outcome of the case and not a mere possibility arising from some unknown future contingency." *Federated*, 475 Mich at 291.

> [T]o have standing on appeal, a litigant must have suffered a concrete and particularized injury, as would a party plaintiff initially invoking the court's power. The only difference is a litigant on appeal must demonstrate an injury arising from either the actions of the trial court or the appellate court judgment rather than an injury arising from the underlying facts of the case. [*Id.* at 291-292.]

Furthermore, this Court has noted that the cases requiring intervention "are readily distinguishable from cases involving claims for attorney or receivership fees." *Abel*, 302 Mich App at 242. Here, Charrington "had no interest in [plaintiff]'s claim until the [trial] court issued an order denying part of the fees [it] had requested." *Id.* The order the trial court entered limited the amount Charrington could recover in rent. Thus, although Charrington "was not a named party in the underlying action, [it] has a special, concrete, particularized interest" and can weigh in on the amount to which it was entitled for the receiver's use of its property. *Id.* at 244. Accordingly, Charrington was an aggrieved party eligible to appeal the trial court's final order.

## III. MOTION FOR RENT AND REMOVAL EXPENSES

On appeal, Charrington alleges that the trial court erred when it reduced the amount of compensation it sought as rent from the receiver and by denying its request for payment of removal and cleanup expenses. We disagree.

## A. STANDARD OF REVIEW

Receivers are appointed pursuant to a trial court's equitable powers, MCL 600.2926, and "decisions regarding equitable claims, defenses, doctrines, and issues are reviewed de novo." *Beach v Lima Twp*, 283 Mich App 504, 508; 770 NW2d 386 (2009). This Court reviews for clear

error the findings of fact supporting those decisions. *Id*. at 521. "A finding is clearly erroneous where, after reviewing the entire record, this Court is left with a definite and firm conviction that a mistake has been made." *Alan Custom Homes, Inc v Krol*, 256 Mich App 505, 512; 667 NW2d 379 (2003). We review for an abuse of discretion a trial court's "decision to approve or disapprove the individual expenses incurred by the receiver." *Ypsilanti Charter Twp v Kircher*, 281 Mich App 251, 275; 761 NW2d 761 (2008). An abuse of discretion occurs when the trial court's decision is outside the range of "reasonable and principled outcome[s]." *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006). Questions of statutory interpretation are also reviewed de novo. *Ligons v Crittenton Hosp*, 490 Mich 61, 70; 803 NW2d 271 (2011).

## B. ANALYSIS

We note that there is no dispute that Charrington is owed compensation for the time the receiver had possession of its premises to inventory and auction EMC2's property. The dispute in this case is solely about the amount Charrington received. The trial court adopted plaintiff's proposal to compensate Charrington with 24% of the recovery, after costs were paid, because that was roughly the same percentage plaintiff was to receive on the debt it was owed as a result of the receivership. Charrington argues that the trial court's reduction of the rent it requested was inequitable because it caused Charrington to subsidize plaintiff's efforts to collect on its debt. Plaintiff counters that it is Charrington's position that is inequitable, because it seeks the entirety of the recovery, causing plaintiff to have paid for a receivership that recovered nothing for it.

In calculating the amount it sought to receive as rent from the receiver, Charrington used the rental rate found in its lease with EMC2. Charrington contends that if the receiver wanted to pay less rent, it ought to have located and rented other premises. This argument not only lacks any legal support, but is illogical. Acceptance of Charrington's position would require receivers to waste precious time and resources attempting to determine the fair-market rental value of the premises where property was abandoned and investigate whether it is cheaper to leave the property where it is located or to move it to a different location. The costs, in both time and money, that would have to be incurred in locating other buildings, calculating fair-market rent, contracting for movers, and then securing and moving all of the property to an alternate location, not to mention the risk of damage to the property during packing, moving, and unpacking, would constitute a waste of the receiver's resources. Receivers are not required to choose between potentially wasting limited resources or becoming liable for nonnegotiable amounts of rent in the event a debtor merely leases the premises where it keeps, stores, or abandons property. Although premises owners are entitled to compensation for the time they are unable to access, clean, rent, or otherwise use their premises while the premises are under the control of the receiver, no statute or caselaw requires a trial court to order that a receiver pay fair-market rent for that time or provides that the rental rate is established by a lease the premises owner may have had with the debtor.

Charrington and plaintiff both rely on *Vogt v Gen Necessities Corp*, 260 Mich 349; 244 NW 499 (1932). We find *Vogt* to have little practical value for proper determination of this issue. Although *Vogt* involved a dispute regarding the amount of rent to which a lessor was entitled for the receiver's use of the property, the trial court ultimately ruled that the lessor was entitled to "reasonable rent" for the period of occupancy. *Id.* The lessor appealed, arguing that the receivers had adopted the lease and, therefore, assumed liability for taxes and water charges. *Id.* It further argued that, even if the receivers had not adopted the lease, their liability was measured by the

lease's terms and, therefore, they owed rent, taxes, and water charges for the period of occupancy. *Id.* The receivers argued that they did not adopt the lease and that their liability was only "a reasonable rental of the premises for the time they occupied them." *Id.*

Our Supreme Court determined that whether the lease had been adopted by the receivers was "not a material question in this case because the lessor demanded and accepted a surrender of the premises on October 1, 1930; and, because, in determining the amount of rent which the receivers should pay, the trial court allowed it at the sum stipulated in the lease." *Id.* at 350-351. The Court noted that the trial court had ordered the receivers to pay $2,000 for "rent for the two months the receivers were in arrears" and concluded that neither side had grounds to complain. *Id.* at 351. That is, because the amount ordered by the trial court was the rental amount found in the lease, the lessor was already receiving what it requested, and because "there was no evidence of reasonable rental," the receivers could not show that the $1,000 did not constitute a reasonable rental rate. *Id.* at 351. Because our Supreme Court expressly declined to determine whether the lease had been adopted by the receivers, it provides no guidance on that issue. Similarly, it declined to consider the reasonability of the $1,000 per month rent. At best, the takeaway from *Vogt* is that the lessor was entitled to a reasonable amount of rent.

Charrington argues that it was entitled to the rent provided for in its lease with EMC2 because its lease with EMC2 was an arm's-length transaction and, therefore, automatically constituted the fair-market rental rate. Assuming, without deciding, that this is true, Charrington has failed to establish that fair-market rate is the same as reasonable rent. Although that might make a good starting point for establishing reasonable rent, legal determinations of reasonableness, in any context, are always dependent on the specific circumstances. See, e.g., *Smith v Khouri*, 481 Mich 519, 529; 751 NW2d 472 (2008) (holding that trial courts should consider the totality of the circumstances when determining a reasonable attorney fee); *Riddle v McLouth Steel Prods Corp*, 440 Mich 85, 97; 485 NW2d 676 (1992) ("What constitutes reasonable care under the circumstances must be determined from the facts of the case."); *Loutts v Loutts*, 309 Mich App 203, 215; 871 NW2d 298 (2015) (holding that the trial court "considered the equities of this case, and what was just and reasonable under the circumstances," when it "determined that the value of the business would only be used for the purposes of property division"); *Comerica v City of Adrian*, 179 Mich App 712, 724; 446 NW2d 553 (1989) (probate courts have the discretion to determine the weight any factor should have in determining reasonable compensation for a trustee, but must consider the circumstances of the case to determine "which factors are to be given weight.").

Therefore, assuming the lease established fair-market rent for the premises, the trial court still had to determine whether that amount was reasonable under the circumstances. In addition, because it was an equitable proceeding, the trial court had to consider whether it would be equitable to award Charrington fair-market rent. In making these determinations, the trial court had to consider: 1) that the value of EMC2's remaining property was too small for everyone to receive full payment for what they were owed; 2) whether it would have been reasonable for the receiver to locate and rent other premises and move the machinery before conducting an inventory and auction; and 3) whether it was equitable to award Charrington rent in an amount greater than the entire recovery by the receiver to the detriment of the secured creditor who was paying the costs of the receivership. Considering the totality of the circumstances, Charrington has failed to establish that an award of fair-market rent would have been reasonable or equitable in this case.

Plaintiff proposed what it believed to be an equitable way to determine how much Charrington should be compensated by making it a percentage of the recovery. This method incentivized maximization of recovery and minimization of receiver costs by tying both entities' recovery to the amount recovered. Notably, Charrington never provided the trial court with an alternative method for calculating equitable compensation. Instead, Charrington demanded, and continues to demand, the entire recovery. Under the circumstances, plaintiff's proposal had a logic to it that rendered it a reasonable method for calculating an equitable amount of compensation to Charrington. Charrington has failed to show clear error in the trial court's factual determinations, *Beach*, 283 Mich App at 521, or that its award of 24% of what the receiver recovered was an abuse of discretion. *Maldonado*, 476 Mich at 388.

We are also unpersuaded by Charrington's argument that the trial court erred when it denied Charrington's request for removal or cleanup expenses. The question of whether any specific charges incurred or requested by a receiver were reasonable is within the discretion of the trial court. *Kurrasch v Kunze Realty Co*, 296 Mich 122, 123; 295 NW 583 (1941). "Like all questions of costs in courts of equity, allowances of this kind are largely discretionary, and the action of the court below is treated as presumptively correct, since it has far better means of knowing what is just and reasonable than an appellate court can have." *Id.* Likewise, a trial court uses it discretion to determine which costs were necessary for the receiver to complete its obligations. See *Ypsilanti Fire Marshal v Kircher*, 273 Mich App 496, 535-536; 730 NW2d 481 (2007).

In denying Charrington's request, the trial court noted that Charrington had not indicated which items were left by EMC2 and what, if anything, was left that had not been there before the receiver showed up. The record supports this finding. Charrington obtained an order of eviction against EMC2 on May 17, 2019. One week later, plaintiff moved to reopen the instant case and have a receiver appointed. Had plaintiff never obtained a receiver, Charrington would have been responsible for the entire removal and cleanup of the premises, including equipment removal, special chemical disposal, and general cleaning. Instead, because of plaintiff's efforts, the receiver took possession and sold off some of the property. Thus, the appointment of the receiver benefited Charrington by removing some property without cost to Charrington. However, the receiver's possession of the premises in order to inventory and sell the property did not impose upon it the obligation to leave the premises in better condition than it found them. Because Charrington has failed to show that the removal and cleanup costs it sought were incurred as a result of the receiver's actions, rather than those of EMC2, the trial court did not abuse its discretion when it determined that Charrington was not entitled to them.

Affirmed.

/s/ Christopher M. Murray
/s/ Cynthia Diane Stephens