*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LEONORA WALCHAK,

        Plaintiff-Appellant/Cross-Appellee,

v

DAN W. WALCHAK,

        Defendant-Appellee/Cross-Appellant.

UNPUBLISHED
April 25, 2024

No. 362896
Otsego Circuit Court
LC No. 2022-018811-CH

Before: GADOLA, C.J., and BORRELLO and PATEL, JJ.

PER CURIAM.

Plaintiff appeals as of right an order granting summary disposition in favor of defendant under MCR 2.116(C)(10) in this adverse-possession matter. Defendant cross-appeals as of right from the same order, challenging the trial court's denial of his request for costs as frivolous-action sanctions. Defendant also argues on cross-appeal that, even if the trial court erred by granting summary disposition under MCR 2.116(C)(10), summary disposition was nevertheless warranted under the alternative grounds he raised under MCR 2.116(C)(7) and (C)(8). We affirm.

## I. FACTUAL BACKGROUND

Plaintiff and defendant are siblings. The Walchak family owned several properties in and around Gaylord, Michigan. The disputed property in this matter is located at 4120 Buck Road, Gaylord, Michigan (the Property). In addition, the Walchak family owned a neighboring property at 4152 Buck Road, a vacant lot adjoining the 4152 Buck Road property, property located at 750 Maple Manor Drive, Gaylord, Michigan, and 80 acres of land in nearby Elmira, Michigan. Elizabeth Walchak (Elizabeth), the parties' mother, used deeds to convey interests in real property "[i]n lieu of common estate planning tools" so that the family could avoid probate after her death. In 1975, Elizabeth executed a quitclaim deed conveying the Property to plaintiff, defendant, and another one of her daughters, Elizabeth Walchak (Beth), as joint tenants with full rights of survivorship, but reserving for herself a life-estate interest in the Property. Upon Elizabeth's death in 2005, plaintiff, defendant, and Beth became the joint titleholders of all the family properties. After Beth's death in 2016, plaintiff and defendant became the sole owners of the Property, which they held as joint tenants with full rights of survivorship.

The parties dispute numerous factual issues. They dispute who purchased the Property. They dispute whether plaintiff lived at the Property continuously after its purchase. Plaintiff averred in her affidavit that she moved into the home on the Property in 1988, and she lived there continuously since that time, with the exception of a brief period that the Property was under construction from 2005 to 2006. Conversely, defendant presented evidence that plaintiff lived at 718 West Street, Gaylord, Michigan (the West Street property), which she purchased in December 1997, for a period of about five years. The parties also dispute whether plaintiff claimed the Property as her principal residence (or homestead) for tax purposes.

However, the parties do not dispute that defendant was allowed on the Property from time to time to perform maintenance and repair activities. Defendant identified 86 separate maintenance and repair activities he performed on the Property. The parties dispute the extent to which defendant performed work on the Property, as well as whether he stayed at the home on the Property on other occasions. They also dispute whether defendant was paid for his work. Regardless, plaintiff acknowledges that she allowed defendant on the Property periodically to perform maintenance and repair work.

In January 2005, plaintiff conveyed her interest in the other three family properties back to Elizabeth, Beth, and defendant. She claims that she did so because defendant "duped" her into the conveyance under the guise that doing so would protect the assets during her ongoing divorce. In 2005 and 2006, plaintiff and Beth undertook a significant renovation to the home on the Property. Plaintiff alleges that she and Beth paid approximately $300,000 to renovate the home. Plaintiff testified that when defendant raised objections to some of the decisions concerning the remodel, plaintiff told defendant that the Property was her property, and that "he had no input into any decisions being made" about the Property. Plaintiff acknowledges that she and her daughter, Aurora Walchak-Arndt, moved out of the Property temporarily to accommodate the construction, but they moved back into the home once construction ended in the fall of 2006. Plaintiff also claims that most of the repairs and improvements that defendant made to the home were removed during the 2005–2006 remodel.

Upon Beth's death in 2016, plaintiff and defendant became the sole owners of the Property, and defendant became the sole owner of the other family properties. Plaintiff was concerned whether the Property would pass to Aurora upon plaintiff's death. Plaintiff testified that she reached an agreement with defendant that the parties would execute a deed granting Aurora an interest in the Property as a joint tenant with full rights of survivorship, thus sharing in the joint tenancy with plaintiff and defendant. In exchange, defendant would grant plaintiff, Aurora, and the parties' brother, Walter Walchak, Jr., an interest in the other family properties.

On February 21, 2017, plaintiff and defendant executed an "Enhanced Life Estate Deed," also known as a Lady Bird deed,[1] granting the parties and Aurora an interest in the Property as

---

[1] See *In re Rasmer Estate*, 501 Mich 18, 44 n 18; 903 NW2d 800 (2017) ("[A *Lady Bird deed* is a] deed that allows a property owner to transfer ownership of the property to another while retaining the right to hold and occupy the property and use it as if the transferor were still the sole owner.") (cleaned up).

"Joint Tenants with Right of Survivorship" (the 2017 deed). The 2017 deed is a form document containing handwritten information. The parties dispute who filled out the 2017 deed, but a notation on the deed states that plaintiff prepared it. Regardless, plaintiff acknowledges that she signed the document and later recorded it with the Otsego County Register of Deeds.

The 2017 deed for the Property identifies plaintiff and defendant as the "Grantors," and "Joint Tenants with Right of Survivorship." Aurora is identified as the "Grantee." In addition to conveying the property interest to Aurora, the 2017 deed states, "The Grantors reserve during the lifetime of each Grantor a life estate coupled with an unrestricted power to convey, which includes the power to sell, gift, mortgage, lease and otherwise dispose of the premises during the Grantor's lifetime, pursuant to Land Title Standard 9.3." At the same time, defendant executed Lady Bird deeds for the other family properties, conveying a joint-tenancy interest with full rights of survivorship to the other family properties to plaintiff, Aurora, and Walter Walchak, Jr. and, once again, retained for himself a life estate with an unrestricted power to convey the properties during his lifetime. Plaintiff recorded those three deeds at the same time that she record the 2017 deed for the Property.

According to plaintiff, she believed that Aurora held an interest in the Property as a joint tenant with full rights of survivorship. Plaintiff claims that in 2021, she learned that defendant's enhanced life-estate interest allows him to destroy Aurora's interest if plaintiff predeceased him. It is unnecessary for us to address whether this representation is accurate because plaintiff does not dispute that she and defendant remained joint tenants with full rights of survivorship. Relevant to this appeal, plaintiff represents that this revelation prompted her to sue defendant for adverse possession and for an order to quiet title to the Property. Plaintiff asserted that she met all elements of adverse possession for the 15-year limitations period, and that title to the Property vested with her in 2003.

Before significant discovery commenced, defendant moved for summary disposition under MCR 2.116(C)(7), (C)(8), (C)(10), and (I)(1).[2] Defendant argued that the 2017 deed waived and released any preexisting claim plaintiff may have had for adverse possession. Defendant also challenged whether plaintiff continuously and exclusively resided on the Property, as well as whether she excluded defendant from the premises. Most critically, defendant asserted that plaintiff did not provide evidence of acts or declarations that unambiguously provided notice to defendant of an effort to exclude him from the Property. Defendant further argued that plaintiff failed to state a claim for adverse possession because she could not destroy defendant's contingent-remainder interest by way of adverse possession, and because she did not plead acts that would divest defendant's life estate by excluding him from the Property. Finally, defendant requested his costs and attorney fees as frivolous-action sanctions.

Plaintiff responded that a factual question existed on whether her possession of the Property was hostile to defendant's interest, as well as whether there was an ouster. She added that she obtained title to the Property through adverse possession before she signed the 2017 deed, so her

---

[2] Defendant does not challenge the trial court's ruling on his motion for summary disposition under MCR 2.116(I)(1) in his brief on cross-appeal, so we do not address that ground.

title vested well before that time. Plaintiff asserted that she pleaded a valid adverse-possession claim and that the court should allow her to amend the complaint to fix any potential deficiencies in the pleading. She further argued that questions of fact precluded summary disposition on the issues of intent and adverse possession. Plaintiff also maintained that defendant was not entitled to sanctions because plaintiff's claim had arguable factual and legal merit.

The trial court heard the motion and ruled from the bench. The court agreed with defendant that the adverse possession claim involved defendant's life estate, only, because plaintiff could not obtain defendant's contingent-remainder interest through adverse possession. With regard to defendant's life estate, the court found that plaintiff failed to present clear and cogent evidence that she provided defendant with notice of her intent to exclude him from the Property, stating:

> And while there are many questions of fact I don't find that there's been sufficient evidence submitted by the plaintiff to create a question of fact on that issue. There hasn't been any evidence of any kind of expressed notice given to Dan by Leonora. In other words her sending him a letter or making verbal statements you are not allowed on this property anymore. And certainly no evidence that Dan was aware of any intent by Leonora to exclude or displace him and his rights to be on that premise [sic].

The trial court noted that plaintiff could have excluded defendant from the premises at the time the parties were contemplating the 2017 deed; instead, she chose to sign the 2017 deed. And the fact that plaintiff allowed defendant on the Property to make improvements showed that he did not have notice that plaintiff was excluding him from the Property. Accordingly, the trial court granted defendant's motion for summary disposition under MCR 2.116(C)(10). But the court denied summary disposition under MCR 2.116(C)(7) and (C)(8), holding that plaintiff had pleaded a valid claim. Finally, the court denied defendant's request for sanctions. Plaintiff appealed the trial court's decision to this Court, and defendant claimed a cross-appeal.

## II. SUMMARY DISPOSITION

Plaintiff argues that the trial court erred by granting defendant's motion for summary disposition because a factual dispute existed regarding whether defendant had notice or knowledge that plaintiff possessed the Property adversely. We disagree.

## A. STANDARDS OF REVIEW

We review de novo the lower court's decision on a motion for summary disposition. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). Summary disposition under MCR 2.116(C)(10) is proper when, after considering all evidence in the light most favorable to the non-moving party, the court determines there is no genuine issue of material fact. *Id*. at 160. "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Id*. (cleaned up).

When a motion for summary disposition is filed before the close of discovery, the operative question is whether summary disposition is premature because further discovery stands a fair chance of uncovering factual support for the nonmovant's position. *Marilyn Froling Revocable*

-4-

*Living Trust v Bloomfield Hills Country Club*, 283 Mich App 264, 292; 769 NW2d 234 (2009). "The party opposing summary disposition must offer the required MCR 2.116(H) affidavits, with the probable testimony to support its contentions." *Id.* at 292-293. See also *Mich Nat'l Bank v Metro Institutional Food Serv, Inc*, 198 Mich App 236, 241; 497 NW2d 225 (1993) ("[A] party opposing a motion for summary disposition because discovery is not complete must provide some independent evidence that a factual dispute exists."). Mere speculation that additional discovery may uncover supporting evidence is not enough. *Caron v Cranbrook Ed Community*, 298 Mich App 629, 646; 828 NW2d 99 (2012).

Additionally, claims for adverse possession and to quiet title are equitable claims that we review de novo. *Beach v Lima Twp*, 283 Mich App 504, 508; 770 NW2d 386 (2009) (adverse possession), aff'd 489 Mich 99 (2011); *Burkhardt v Bailey*, 260 Mich App 636, 646-647; 680 NW2d 453 (2004) (quiet title).

## B. ADVERSE POSSESSION

The statutory basis for a claim of adverse possession arises under MCL 600.5801:

> No person may bring or maintain any action for the recovery or possession of any lands or make any entry upon any lands unless, after the claim or right to make the entry first accrued to himself or to someone through whom he claims, he commences the action or makes the entry within the periods of time prescribed by this section.

"Generally, an action for the recovery or possession of land must be brought within 15 years after it accrues." *Wengel v Wengel*, 270 Mich App 86, 92; 714 NW2d 371 (2006), citing MCL 600.5801(4).

A successful adverse possession claim requires proof of the following:

> A claim of adverse possession requires clear and cogent proof that possession has been actual, visible, open, notorious, exclusive, continuous, and uninterrupted for the statutory period of fifteen years. These are not arbitrary requirements, but the logical consequence of someone claiming by adverse possession having the burden of proving that the statute of limitations has expired. To claim by adverse possession, one must show that the property owner of record has had a cause of action for recovery of the land for more than the statutory period. [*Kipka v Fountain*, 198 Mich App 435, 439; 499 NW2d 363 (1993) (citation omitted).]

The clear and cogent evidence standard is "more than a preponderance of the evidence, approaching the level of proof beyond a reasonable doubt." *Walters v Snyder*, 225 Mich App 219, 223; 570 NW2d 301 (1997). As this Court has explained, "[T]he evidence must clearly establish the fact of possession and there must be little doubt left in the mind of the trier of fact as to the proper resolution of the issue." *McQueen v Black*, 168 Mich App 641, 645 n 2; 425 NW2d 203 (1988) Additionally, "[t]he evidence offered in support of adverse possession must be strictly construed with every presumption being exercised in favor of the record owner of the land." *Rozmarek v Plamondon*, 419 Mich 287, 292; 351 NW2d 558 (1984) (cleaned up).

The plaintiff's possession of the land must be hostile and "under cover of a claim of right." *McQueen*, 168 Mich App at 643 (cleaned up). The term "hostile" is a term of art and means a use that is "inconsistent with the right of the owner, without permission asked or given," and that "would entitle the owner to a cause of action against the intruder." *Wengel*, 270 Mich App 92-93 (cleaned up). "[T]he true owner must have actual knowledge of the hostile claim, or the posession [sic] must be so open, visible and notorious as to raise the presumption of notice to the world that the right of the true owner is invaded intentionally and with a purpose to assert a claim of title adversely to his, or so patent that the owner could not be deceived, and such that if he remains in ignorance it is his own fault . . . ." *Doctor v Turner*, 251 Mich 175, 186; 231 NW 115 (1930) (citations omitted).

In this case, the parties jointly own the Property with full rights of survivorship. "A joint tenancy with full rights of survivorship is composed of a joint life estate with dual contingent remainders." *Wengel*, 270 Mich App at 87. In *Wengel*, this Court held that a joint tenant occupying the property may invoke the doctrine of adverse possession to defeat the life-estate interest of the ousted joint tenant, but the occupying tenant has a heightened burden of proof to establish notice or knowledge. *Id.* at 87, 100-101. Relying on long-standing Michigan Supreme Court precedent, the *Wengel* Court outlined the heightened burden:

> [T]here is a presumption, in the context of a claim of adverse possession, that a tenant who occupies and possesses the premises recognizes and is honoring the rights of any cotenants to similarly possess and occupy the property unless there is evidence of *acts or declarations that clearly establish the contrary and that unambiguously provide notice to the cotenants of an effort to displace or exclude them* from the premises in violation of their property rights such that a cause of action arises. [*Id.* at 97 (emphasis added).]

Importantly, this Court held that "[w]hile a tenant in common may acquire title against a cotenant by adverse possession, *the proofs may not be made out by inference*." *Id.* (emphasis added).

With respect to the life estate interest, the ousted joint tenant's claim to recover the property accrues when the wrongful ejectment occurs, giving the ousted joint tenant 15 years to sue. *Id.* at 87-88. But an occupying joint tenant with full rights of survivorship does not have the power to destroy the contingent-remainder interest of another joint tenant through adverse possession because the ability of the joint tenant to exercise those rights does not accrue until the contingency occurs, i.e., the death of the occupying joint tenant. *Id.* at 102-106. In summary, there are three elements that the plaintiff must establish by clear and cogent proof to prove adverse possession against another joint tenant's life estate: "(1) the intent; (2) the adverse possession in fact; and (3) the knowledge or notice." *Id.* at 98 (cleaned up).

For most of the history of this dispute, the parties were the sole owners of the Property as joint tenants with full rights of survivorship. In 2017, the parties signed a deed that conveyed the Property to themselves and Aurora as joint tenants with full rights of survivorship, but the deed recognized that plaintiff and defendant held an enhanced life estate that allowed them to sell the Property during their lifetime. Plaintiff does not argue on appeal that the parties no longer hold the Property as a joint tenancy with full rights of survivorship. Rather, she argues that as a result of the enhanced life-estate provision, Aurora now holds only a destructible contingent-remainder

interest in the Property. More importantly, plaintiff does not dispute that the heightened burden to establish notice in the joint-tenancy context, as outlined in *Wengel*, applied to her adverse-possession claim.

Plaintiff argues that she did not need to make any type of affirmative declaration of her intent to exclude defendant from the Property; rather, she maintains that her acts alone were sufficient to give notice. A plaintiff may establish notice or knowledge on the part of the joint tenant through acts or declarations that unambiguously provide notice of an effort to displace or exclude the other joint tenant from the premises. *Wengel*, 270 Mich App at 97. The acts cannot, however, give rise to a mere inference of an effort to displace the other joint tenant. *Id*.

The trial court correctly recognized that plaintiff failed to make express declarations or take other action that clearly and unambiguously provided notice to defendant of her effort to exclude him from the premises. The matter concerns defendant's (now enhanced) life-estate interest, only. A joint tenant with full rights of survivorship cannot destroy the contingent-remainder interest of another joint tenant with full rights of survivorship through adverse possession. *Id*. at 102. While plaintiff does not expressly waive her claim to defendant's contingent-remainder interest, she does not assert an argument on appeal claiming an entitlement to that interest. Accordingly, we find that this matter concerns defendant's life-estate interest, only.

Examining the record in the light most favorable to plaintiff, we find that plaintiff failed to present clear and cogent evidence to overcome the presumption in favor of defendant and establish a genuine issue of material fact on the notice element of adverse possession. Plaintiff presented evidence that she lived at the Property continuously and exclusively since 1988, with the exception of a brief period during the 2005 to 2006 renovation. According to plaintiff, defendant never lived at the Property, and he never stayed there overnight. Both parties have acknowledged that Elizabeth used real-property conveyances as a way to avoid probate. Plaintiff stated that Elizabeth initially purchased the Property, but she repaid Elizabeth the $72,500 purchase price for the Property "over the years." Plaintiff maintains she has claimed a principal residence exemption for the Property since 1994. Plaintiff represented in her affidavit that she paid the property taxes, insurance, and utilities for the home on the Property. And plaintiff and Beth paid for and oversaw the renovation and made all the necessary decisions.

Defendant disputes whether plaintiff resided at the Property continuously and exclusively since 1988. Defendant presented evidence that plaintiff resided at the West Street property from 1998 to 2003, and claimed the West Street property as her homestead for tax purposes each year from 2000 to 2007, with the possible exception of tax years 2001 and 2002. Plaintiff also affirmed in her mortgage documents that the West Street property would serve as her homestead. These facts raise questions regarding plaintiff's intent and whether she did in fact hold and claim the Property adversely.

But plaintiff's argument on appeal relates specifically to the notice element of adverse possession. We agree with defendant that plaintiff's sole possession of the Property is not sufficient to overcome the presumption that plaintiff was honoring defendant's possessory rights. Simply because defendant did not live at the Property does not establish that plaintiff notified him of her intent to oust him. As this Court recognized in *Wengel*, 270 Mich App at 97, a possessing

cotenant is presumed to recognize and honor the possessory rights of any cotenants. Similarly, plaintiff's decision to pay for the improvements to the Property, as well as taxes and insurance, also does not constitute clear and cogent proof that defendant knew she intended to oust him. This is particularly true where plaintiff acknowledges she allowed defendant on the Property over the years to perform many of those maintenance activities.

Plaintiff has presented some evidence that, when viewed in the light most favorable to her, would support that plaintiff made certain declarations and took certain acts to exclude defendant from the Property. Plaintiff stated that she did not allow defendant on the Property unless she invited him. Defendant also did not enter the home when he visited the Property. Instead, the parties would talk on the front porch or in the "back portion" of the house, without defendant fully entering the home. Plaintiff stated that she did not provide defendant with a key to the house after the 2005 to 2006 renovation, and she changed the locks to the detached garage "years ago" to ensure that defendant could not access it. The record is not clear on whether defendant was ever denied access to the home or garage upon his request. And plaintiff's testimony is undermined by her acknowledgment that defendant was allowed on the Property over the 35-year duration of her occupancy to perform repairs and maintenance.

Additionally, a neighbor residing near the Property stated in his affidavit that he saw the police escorting defendant off the Property in 2021. Plaintiff alleged in her complaint that defendant represented in a July 20, 2021 Michigan State Police report relating to the incident that he does not reside at the Property. But the police report is not part of the lower court record, and the circumstances regarding this incident are not clear from the record. Regardless, this incident occurred only months before plaintiff filed the complaint, which is not nearly long enough to satisfy the 15-year limitations period.

The most direct evidence of notice is plaintiff's statement in her affidavit regarding a conversation that the parties had during the 2005–2006 renovation. Plaintiff averred that when defendant raised issues with some decisions she had made regarding the renovation, she told defendant that the Property was her property and that he had no input on any decisions regarding the Property. This is the only evidence in the record of any declarations that would give defendant notice of plaintiff's intent to exclude him from the Property. This sole declaration was not sufficiently clear and unambiguous to provide defendant with notice of plaintiff's intent to exclude him from the Property.

As the trial court explained, plaintiff's decision to allow defendant on the Property to perform nearly all of the 86 maintenance activities itemized in defendant's list, both before and after plaintiff claims she obtained title in 2003, signals that he was not excluded from the premises. Plaintiff acknowledged that, as late as 2018 or 2019, she allowed defendant onto the Property to assist her with repair activities, despite her declaration that the Property was hers. And in 2017, plaintiff signed a deed to the Property that reaffirmed and acknowledged defendant's interest as a record-title holder and granted defendant an enhanced life estate in the Property. While plaintiff represents that she believed defendant was granting a joint tenancy interest to Aurora, the idea was that the parties would share in that joint tenancy interest with Aurora. Plaintiff does not represent that defendant told her he would give up his record-title interest in the Property at any point. Plaintiff's decision to sign the deed undercuts her argument that she obtained title to the Property through adverse possession in 2003. While plaintiff claims she did not realize the legal effect of

that document as it relates to Aurora's property interest, the trial court correctly noted that the issue would create a factual dispute about her intent, but not on the issue of notice.

When examining plaintiff's conduct as a whole, she has not overcome the presumption that she was honoring defendant's right to possess and occupy the Property. Plaintiff's conduct over the last 35 years was highly ambiguous and contradictory. Plaintiff occasionally told defendant the Property was hers, and other times reaffirmed defendant's possessory interest by allowing him entry and recognizing his legal rights. Plaintiff did not meet her heightened burden to establish, by clear and cogent proof, that she gave clear and unambiguous notice to defendant of her effort to exclude him from the premises. Accordingly, plaintiff cannot establish the notice element of adverse possession.

Finally, we reject plaintiff's argument that summary disposition was prematurely granted because the parties did not have an opportunity to engage in any meaningful discovery. Plaintiff has not demonstrated that further discovery would stand a fair chance of uncovering further support for her position. See *Marilyn Froling Revocable Living Trust v Bloomfield Hills Country Club*, 283 Mich App 264, 292; 769 NW2d 234 (2009). The evidence regarding plaintiff's own acts and declarations is information that should be known to plaintiff and in her possession. Plaintiff argues that the parties have not deposed the affiants, but she does not explain what additional evidence would be uncovered to support her position. Nor did plaintiff "offer the required MCR 2.116(H) affidavits, with the probable testimony to support its contentions." *Id*. at 292-293. See also *Mich Nat'l Bank*, 198 Mich App at 241. Instead, plaintiff speculates that "discovery could produce sufficient evidence to overcome the presumption" regarding notice. Without independent evidence to support that further discovery stands a fair chance of uncovering factual support for her position, plaintiff cannot demonstrate that summary disposition was premature. Accordingly, the trial court did not err by granting summary disposition under MCR 2.116(C)(10).[3]

## III. SANCTIONS

Defendant argues on cross-appeal that the trial court erred by denying his sanctions request because the complaint was frivolous. We disagree.

We review for clear error the trial court's finding on whether an action was frivolous and review de novo whether the trial court interpreted and applied the law properly. *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 359090); slip op at 18. "A finding is clearly erroneous when this Court is left with the definite and firm conviction that the trial court has made a mistake." *Id*. at ___; slip op at 18. When the trial court has discretion to order a sanction, we review the trial court's decision for an abuse of discretion. *Id*. at ___; slip op at 18. "A trial court abuses its discretion when its decision falls outside the range of reasonable outcomes." *Id*. at ___; slip op at 18.

---

[3] Because we conclude that the trial court properly granted summary disposition under MCR 2.116(C)(10), we need not address defendant's alternative argument on cross-appeal that the trial court erred by denying his motion for summary disposition under MCR 2.116(C)(7) and (C)(8).

MCR 1.109(E)(2) requires every court filing to be signed by the party's attorney or the party if he or she is self-represented. In addition, MCR 1.109(E)(5) provides that a person's signature on a court filing constitutes a certification by the signer that:

> (a) he or she has read the document;

> (b) to the best of his or her knowledge, information, and belief formed after reasonable inquiry, the document is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law; and

> (c) the document is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

If a person submits a filing that violates MCR 1.109(E)(5), the court must impose sanctions on the signer and the represented party:

> If a document is signed in violation of this rule, the court, on the motion of a party or on its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including reasonable attorney fees. The court may not assess punitive damages. [MCR 1.109(E)(6).]

In addition to sanctions provided under MCR 1.109(E)(6), a party that pleads a frivolous claim or defense is subject to costs as provided in MCR 2.625(A)(2). MCR 1.109(E)(7).

If a court determines that an action or defense was frivolous, MCL 600.2591(1) also dictates that the court must award costs and attorney fees to the prevailing party and assess the award against the nonprevailing party and that party's attorney:

> Upon motion of any party, if a court finds that a civil action or defense to a civil action was frivolous, the court that conducts the civil action *shall* award to the prevailing party the costs and fees incurred by that party in connection with the civil action by assessing the costs and fees against the nonprevailing party and their attorney. [MCL 600.2951(1).]

MCL 600.2591(3) defines the term "frivolous" to mean at least one of the following: (1) "[t]he party's primary purpose in initiating the action or asserting the defense was to harass, embarrass, or injure the prevailing party[,]" (2) "[t]he party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true[,]" or (3) "[t]he party's legal position was devoid of arguable legal merit." MCL 600.2591(3)(a)(*i*)-(*iii*). A "prevailing party" is "a party who wins on the entire record. MCL 600.2591(3)(b). This Court determines whether a claim is frivolous using an objective standard, and considering the circumstances at the time the plaintiff asserted the claim. *Tolas Oil*, ___ Mich App at ___; slip op at 18-19.

The trial court denied defendant's request for sanctions because the court concluded that plaintiff properly pleaded her claim and that her theory (adverse possession against a cotenant)

had arguable legal merit. The court concluded that the claim was not so clearly unenforceable that it lacked legal merit or that it was filed for a frivolous reason. We agree.

Defendant has not established that plaintiff had no reasonable basis to believe that the facts underlying her legal position were true. Defendant argues that plaintiff failed to mention or attach the 2017 deed to her complaint. But plaintiff argued that the 2017 deed was irrelevant for purposes of her adverse-possession claim because (1) she adversely possessed the Property before 2017, and (2) she did not convey a new property interest to defendant, but rather, reaffirmed his existing record-title interest through the 2017 deed. Therefore, plaintiff presented a cogent reason for not incorporating or attaching that document to her complaint.

Defendant also maintains that plaintiff had no reason to believe that she resided on the Property since 1988 because she signed a mortgage document representing that another property would serve as her homestead. Plaintiff stated in her affidavit that she signed that document in error. Plaintiff explained that she learned about the error and sought to address it with her local government. The mere fact that plaintiff signed the mortgage documentation does not establish that plaintiff had no reasonable basis to believe that she resided continuously on the Property since 1988.

As for the legal basis for the claim, defendant argues that plaintiff could not destroy his contingent remainder through adverse possession. Plaintiff does not argue that she could, but argues instead that the trial court had the ability to fashion the appropriate remedy for her adverse-possession claim. She cites MCR 2.601(A), which provides that except in the context of default judgments, "every final judgment may grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded that relief in his or her pleadings." Plaintiff's counsel also explained during the hearing on the motion for summary disposition that plaintiff's goal was to quiet title to defendant's life estate so that she may live at the Property uninterrupted during her lifetime. While plaintiff and her attorney may have pleaded the claim too broadly, the complaint was not devoid of any arguable legal merit.

As for the existence of the 2017 deed, plaintiff presented a reasoned argument for why that deed did not waive her adverse-possession claim. Specifically, she argued that defendant misrepresented the nature of that deed to her. The mere fact that plaintiff did not prevail on the merits does not render her complaint frivolous. See *Kitchen v Kitchen*, 465 Mich 654, 662-663; 641 NW2d 245 (2002) (explaining that "[n]ot every error in legal analysis constitutes a frivolous position").

Finally, defendant has not presented evidence that plaintiff sued him for an improper purpose, such as to harass, injure, or embarrass him. Defendant argued to the trial court that this lawsuit was a fishing expedition designed to obtain evidence to support other clients and lawsuits,

such as a potential lawsuit that Aurora may file against him in relation to another family property. But defendant has not presented any evidence to support that argument. We find that the trial court did not clearly err by denying defendant's request for frivolous-action sanctions.

Affirmed.

/s/ Michael F. Gadola
/s/ Stephen L. Borrello
/s/ Sima G. Patel